## JAMES A. McANNULTY *et al.*

### *v.*

## SAMUEL ·R. McANNULTY *et al.*

*Filed at Springfield March 23, 1887.*

1. WILL—*revocation by subsequent marriage.* Under the act of 1872, a marriage since its adoption, whether of a man or woman, operates, *per se,* as a revocation of a prior will.

2. STATUTE OF FRAUDS—*verbal ante-nuptial agreement.* A mere verbal agreement, made before marriage, whereby the intended wife releases and renounces all interest in the proposed husband's estate after his death, is obnoxious to the first section of the Statute of Frauds.

3. SAME—*effect of signing after the marriage.* Nor will the signing of an ante-nuptial agreement in form, after marriage, although purporting to have been executed before the marriage, have the effect to take a verbal agreement of the same effect, made before the marriage, out of the statute. The execution of such agreement can be regarded no further than a mere acknowledgment, in writing, of the terms of the previous verbal agreement, which fails to meet the requirements of the statute.

4. SAME—*effect of the marriage itself.* The subsequent marriage of the parties, after making a verbal ante-nuptial agreement, will not take the same out of the operation of the Statute of Frauds.

5. SAME—*estoppel by fraud from pleading the statute.* Doubtless a verbal ante-nuptial agreement might, under special circumstances, be enforced in equity, to prevent the perpetration of a fraud, as, when the wife has, by some artifice or trick, prevented the contract from being reduced to writing, and has received a substantial benefit from it, so that it would operate as a fraud upon the husband.

APPEAL from the Circuit Court of Adams county; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. GEORGE A. ANDERSON, and Messrs. BONNEY ·& WOODS, for the appellants:

Our Statute of Frauds, (Rev. Stat. 1874, chap. 59, sec. 1,) upon the subject of contracts made in consideration of marriage, is identical with the fourth section of the English statute upon the same subject, and this particular clause of the

English statute has not been generally adopted in the United States.   2 Parsons on Contracts, (5th ed.) 63, 64.

An agreement made before marriage, but not reduced to writing, is within the statute; nor will a recognition, after the marriage, of an oral promise made before marriage, take the case out of the statute.. Marriage is not considered such a part performance as will avoid the operation of the statute. 1 Madd. Ch. 373; 2 Parsons on Contracts, 72; Bump on Fraud. Con. 312.

Neither marriage, nor a written acknowledgment after marriage, nor a representation at the time of the marriage, that a post-nuptial settlement will be valid, can give it validity when otherwise void.  Bump on Fraud. Con. 312; 1 Madd. Ch. 373.

A party seeking to have a written agreement, made after marriage, relate back to an oral ante-nuptial agreement, which was void by the Statute of Frauds, must prove that the omission to reduce it to writing was caused, not by his own negligence, but by the fraud or deceit of the party against whom it is sought to be enforced, for that is the very evil against which the statute is aimed.  *Mountacue* v. *Maxwell,* 1 Str. 236; 2 Pomeroy's Eq. Jur. sec. 921; 2 Story's Eq. Jur. sec. 768, note 2; Pomeroy's Spe. Per. sec. 139, note 5; Fonblanque's Eq. 186.

A marrige shall be deemed a revocation of a will.   *Lant's Appeal,* 95 Pa. St. 279; Rev. Stat. chap. 39, sec. 10, p. 419.

Whatever may be the court's opinion as to the policy of a statute, it is its duty to carry out its provisions so as to effectuate the intention of the law makers.   If found to operate with inconvenience, or to produce hardship, it is for the legislature to apply the corrective.   The court can only give effect to the law as it is adopted.   *Boyd* v. *Cudderback,* 31 Ill. 119; *Beardstown* v. *Virginia,* 76 id. 34; *Richmond* v. *Moore,* 107 id. 433.

In the absence of a statute expressly declaring a will revoked, the court held that marriage without issue, where the

statute made the wife heir to the husband, effected as radical a change in his condition as did the marriage and birth of a child, and that there were, therefore, the same reasons for the presumed revocation in the one case as in the other, and accordingly treated the will as revoked. *Tyler* v. *Tyler*, 19 Ill. 154; *American Board* v. *Nelson*, 72 id. 565; *Duryea* v. *Duryea*, 85 id. 41.

Mr. J. N. Sprigg, for the appellees:

Whatever limitations exist against testamentary power as to the wife or child by later marriage, as to all the world beside, the power is unlimited. *Sheath* v. *York*, 1 Ves. & Beam. 390; *Murphy* v. *Boyles*, 49 Ill. 111.

The Statute of Frauds, as applied to contracts in consideration of marriage, does not influence a court of equity, except where the rights of creditors are involved. *Reade* v. *Livingston*, 3 Johns. Ch. 481, illustrates this proposition.

The Statute of Frauds does not require that a promise in consideration of marriage shall be in writing, signed before marriage. Rev. Stat. chap. 59, sec. 1.

Any fair ante-nuptial agreement, though not in writing, signed before marriage, will be upheld in equity. *Grackenback* v. *Brouse*, 4 W. & S. 546; *Satterthwaite* v. *Emley*, 3 Green, (N. J.) Ch. 489; *Mountacue* v. *Maxwell*, 1 Str. 236; 1 P. Wms. 618; *Dundas* v. *Dutens*, 2 Cox's Ch. 235; *Lant's Appeal*, 95 Pa. St. 279; *Barnes* v. *Irwin*, 2 Dallas, 199.

If it was intended by the parties that the agreement should be in writing, what equity would decree done equity courts will consider as having been done. *Lant's Appeal*, 95 Pa. St. 279.

In such case, equity proceeds, if necessary, on the doctrine of enforcing specific performance. *Sullings* v. *Richmond*, 5 Allen, 192.

The doctrine of specific performance applies upon the facts of the case at bar. Story's Eq. Jur. sec. 759; *Lowry* v. *Tew*, 3 Barb. Ch. 413.

The common law of *prima facie* revocation of a former will by marriage and the birth of a child, so construed in *Tyler* v. *Tyler*, 19 Ill. 151, that marriage simply was given like effect, has become statute law in this State. (*American Board* v. *Nelson*, 72 Ill. 566.) And the *prima facie* presumption may be rebutted as at common law.

Mr. Justice Mulkey delivered the opinion of the Court:

Samuel McAnnulty, a widower, well advanced in life, on the 19th of September, 1882, made his last will and testament, by which he disposed of all his estate, real and personal, among his children and grandchildren. The dispositions of the will were much more favorable to some of the devisees than to others standing in the same relation to the testator, but for the purposes of the questions to be considered this general reference to the inequalities of the will is all that is necessary. On the 18th of October of the following year, the testator intermarried with Margaret Thompson, who had a farm and other property of her own, and a number of grown children by a former husband. On the 26th of October, 1885, McAnnulty died, leaving his widow, Margaret McAnnulty, and the devisees under the will, him surviving. The will having been admitted to probate, James A. McAnnulty, a grandson of the testator, and one of the appellants herein, filed a bill in the circuit court of Adams county to contest the will, and praying for a partition of the real estate of which the testator died seized, according to the Statute of Descents. To this bill, the widow, and all the devisees under the will except the complainant, were made defendants. After the answers were in and replications filed, the court ordered an issue at law to be made up, as required by the statute, which, by agreement of parties, was tried by the court without a jury. The court, upon hearing the proofs, sustained the will, and entered a decree dismissing the bill, from which the complainant and widow have appealed to this court.

The contention of appellants is, that the marriage of the testator subsequent to the making of the will, operated as an absolute revocation of it, to the same extent as if the testator had deliberately revoked it by cancellation. On the other hand, as we understand counsel, it is claimed that a subsequent marriage revokes a will as to the party marrying the testator or testatrix, and as to the issue of such marriage, only. If the latter position is the correct one, it is quite clear the complainant has no such interest in the subject matter of the suit, particularly the land sought to be partitioned, as will enable him to maintain the bill. The will gives him $500 in money, but no interest whatever in real estate. The right of complainant to have it partitioned is rested solely upon the hypothesis that the marriage of his grandfather operated as an absolute revocation of the will, and that by reason thereof the land in question became intestate property.

If section 10, chapter 39, of the Revised Statutes, which has been in force since 1872, is to be given effect according to the letter of the act, and what would seem to be its manifest import, it is difficult to escape the conclusion which appellants draw from it. That section, after providing for the case of a child being born to a testator after the making of a will, which has no bearing at all upon the question now under consideration, then concludes in these words: *"And a marriage shall be deemed a revocation of a prior will."* We have not been able to find, nor have we been referred to, any provision in the statute which modifies or limits this plain and unequivocal declaration of the legislature. The only case cited where this question was raised, since the act of 1872, is *In re Tuller,* 79 Ill. 99. In that case the execution of the will, and subsequent marriage, both occurred before the act of 1872 went into effect, though the testatrix did not die till afterwards. It being insisted there, as it is here, that under the act of 1872 the subsequent marriage operated as an absolute revocation of the will, this court, in disposing of the question, said: "It

is finally insisted, that there is, here, a statutory revocation of the will, by force of the statute of 1872; * * * that 'a marriage shall be deemed a revocation of a prior will;' that as the will did not take effect, nor were any rights acquired under it, until the testatrix's death, its validity depends upon the law as it then stood at the time of her death; that the statute, though passed after the making of the will, takes effect upon it precisely as though the law had been passed before its execution." The court, after discussing at some length the question whether the act cited should be extended to a will executed before its passage, finally held that it did not. Now, if the construction then contended for, and at present contended for by appellants, is not the true one, much time and labor might have been saved in that case by simply saying so, instead of entering into an extended argument to show the statute of 1872 did not apply.

The 18th section of chapter 26, 1 Vict., passed in 1837, provides, "that every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appointment, when the real or personal estate thereby appointed would not, in default of such appointment, pass to his or her heir, customary heir, executor or administrator, or the person entitled as his or her next of kin, under the statute of distribution." While we have found no English case construing this provision, which we can account for only on the ground that the language is so plain that no one has ever questioned the plain import of the language used, yet Jarman, in his work on Wills, (vol. 1, star page 129,) in referring to this provision, expressly declares, "that, unless in the expressly excepted cases, *marriage alone will produce absolute and complete revocation as to both real and personal estate,*" etc. A like statute was passed in 1850, by the Virginia legislature; and Lomax, in his Digest, (vol. 3, p. 148,) says of it, in substance, what is said by Jarman in respect to the British act. (See, also, *Phaup* v. *Woodbridge,* 19 Gratt.

332.) The adoption of this provision in England, and in some of the States of this country, doubtless had its origin, in part, in the diversity of the rulings of the courts and the conflict of opinion with respect to the revocation of wills by implication, on account of marriage, birth of issue, etc.

With certain exceptions and limitations, the general rule at common law undoubtedly is, that marriage, alone, of a *feme sole*, revokes, by implication, a prior will, except when it operates as an appointment under a power, and except, also, in those States, including our own, where the property rights of a married woman are put upon the same footing as those of married men. This rule is rested on the distinct ground that marriage, in the case of a woman, destroyed the ambulatory nature of the will, and left it no longer subject to the wife's control, which is contrary to the very nature of a will. These consequences necessarily resulted from the common law doctrine that the legal existence of the wife, during coverture, was merged in that of her husband. As to a man, marriage alone would not revoke a prior will. It required both marriage and birth of issue. The revocation, even from these circumstances, by the common law, does not universally follow. Presumptively, it does, and in the absence of anything to the contrary they will be held to have that effect. The reason of the rule is, by the earlier authorities, based upon a presumed change in the testator's intentions, caused by the complete change of his situation, resulting from marriage and birth of issue. This logically led to the practice of receiving evidence tending to rebut the presumption, which necessarily involved the subject in more or less uncertainty. (*Brady* v. *Cubet*, Dougl. 31; *Goodtitle* v. *Otway*, 2 H. Bl. 522.) But the receiving of such evidence was never fully concurred in by the profession, and was finally rejected by the courts. (*Marston* v. *Roe*, 8 Ad. & El. 14.) In this state of the law, the provision in the British statute, above cited, was adopted, and quite a number of the States of the Union, including our own, have

enacted, with some diversity, similar provisions. The decisions of this court, based upon the law as it stood before the act of 1872, will be found to have taken the most advanced ground in favor of implied revocation of wills from marriage, as will fully appear from the cases of *Tyler* v. *Tyler*, 19 Ill. 151, *American Board* v. *Nelson*, 72 id. 564, and *Duryea* v. *Duryea*, 85 id. 41. The most accurate presentation of the law on the subject as it existed before the act of 1872, is found in the opinion in the *Tuller case*, 79 Ill. 99, above cited.

In view of the advanced position taken by this court upon the subject, if the statute of 1872 is to have any effect at all, a marriage since its adoption, whether of a man or woman, must operate, *per se*, as a revocation of a prior will, and so we hold.

As respects the appellant, Mrs. McAnnulty, it is claimed by appellees that there was an ante-nuptial agreement between her and the testator, wherein, for a valuable consideration, she released and relinquished all interest in said claim to the testator's estate, in the event of her surviving him, and that, consequently, she now has no interest in the estate. On the hearing, an agreement, bearing date the — day of October, 1883, and purporting to have been signed by both the parties, was put in evidence, which, if executed by her before the marriage, we think fully sustains the claim of appellees. It is not pretended, however, that it was executed by either of the parties before the marriage; but appellees insist, that although the written contract was not signed until after that time, yet the terms of it are identical with those of the verbal agreement made before the marriage, and that it should therefore be given the same effect as if it had been signed before the marriage. Appellants deny that any such agreement as that embodied in the instrument was in fact made. They also deny that the instrument in question was ever signed by Mrs. McAnnulty, or by any one for her, authorized to do so.

The instrument, by its very terms, implies an execution of it before the marriage, such terms not being applicable to

3—120 Ill.

a post-nuptial contract, even if that kind of a contract could be of any avail,—a question which does not arise here. The defence of appellees rests upon an alleged ante-nuptial written agreement. As this instrument was not executed until about a month after the marriage, it is clear that if any agreement existed before or at the time of the marriage, it was a mere verbal agreement, and, as such, it is obnoxious to the Statute of Frauds. The first section of chapter 59 of the Revised Statutes, among other things, declares, "that no action shall be brought whereby to charge * * * any person upon any agreement made upon consideration of marriage." This alleged ante-nuptial agreement clearly comes within the provision of this section, and the statute must be given effect unless something has occurred to take the case out of its operation. The signing of the written instrument after the marriage, can be regarded, at the very farthest, as nothing more than a mere acknowledgment, in writing, of the terms of the previous verbal agreement, and this certainly does not meet the requirements of the statute, for the simple reason the statute requires the *contract* itself to be in writing. The case is unlike that of an express trust, which is only required to be "manifested and proved" by some writing. Doubtless, a verbal ante-nuptial agreement might, under special circumstances, be enforced in equity, in order to prevent the party invoking the statute from perpetrating a fraud upon the other party. Thus, if, in this case, Mrs. McAnnulty had by some artifice, trick or device prevented the contract from being reduced to writing, and had received any substantial benefits from it, so that it would have operated as a fraud upon the testator, we have no doubt of the power of a court of equity in such case to afford the proper relief, notwithstanding the statute, on the general principle that the statute is never to be so expounded as to make it a mere instrument in consummating a fraud upon the party against whom it is invoked. *Jenkins* v. *Eldridge,* 3 Story, 181 ; 2 Pomeroy's Eq. sec. 921.

That marriage is not sufficient to take such an agreement out of the statute, is clearly established by an unbroken current of authority. *Crane* v. *Gough,* 4 Md. 316; *Henry* v. *Henry,* 27 Ohio St. 121; *Flourier* v. *Flourier,* 29 Ind. 564; *Brown* v. *Conger,* 8 Hun, 625; *Finch* v. *Finch,* 10 Ohio St. 501; *Hackney* v. *Hackney,* 8 Humph. 452; *Wood* v. *Savage,* 2 Dougl. 316; *Lloyd* v. *Fulton,* 91 U. S. 479.

With respect to the written instrument, there is a sharp conflict in the testimony as to whether Mrs. McAnnulty ever signed it. The evidence in support of the hypothesis that she did, consists mainly of alleged admissions on her part, testified to, in the main, by persons interested in sustaining the will. She swears positively that she never either signed it herself, or authorized any one else to sign it for her. No one swears to having seen her sign it, nor is her name to it shown to be in her handwriting. Indeed, in our judgment, the decided weight of evidence shows she could neither read nor write, and consequently could have no handwriting. She not only swears this herself, but it is testified to by her grown daughters, and her neighbors who had had occasion to do business with or for her. Besides this, a number of documents and instruments executed by her, and extending back to a period long before her marriage with McAnnulty, were put in evidence, from which it appears she uniformly executed such instruments by making a cross mark between her christian and surnames, as is usually done by those who can not write.

There are other features in the evidence favorable to appellants which are worthy of notice, but we do not feel at liberty to extend the discussion further, as it sufficiently appears, from what we have already said, the law is with appellants.

The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with the views here expressed.

*Decree reversed.*