JANE B. WAY

*v.*

MALVINA HARRIMAN *et al.*

*Filed at Ottawa October 2, 1888.*

1. WITNESS—*competency—party, as against heirs—husband of party.* The daughter of a deceased person claimed the property left by her mother, under a verbal contract to take care of the latter during her life. On a bill by the other heirs of the deceased mother, to subject the property so left by the mother to distribution among all the heirs, denying the right of the claimant under the alleged contract, it was *held*, that the latter was not a competent witness in her own behalf, she being a defendant, and the adverse parties claiming as heirs of her deceased mother, and also that her husband was not a competent witness in her behalf to prove the alleged contract.

2. EVIDENCE—*degree of evidence—to charge an estate under a parol contract.* Where an attempt is made, under cover of a parol contract, to effect a distribution of the property of the estate different from that which the law makes, the proof must be clear, and the testimony must be direct and positive. Such evidence is looked on with jealousy, and should be weighed in the most scrupulous manner.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Bureau county; the Hon. GEORGE W. STIPP, Judge, presiding.

Mr. ROBERT FARWELL, and Mr. O. G. LOVEJOY, for the appellant:

Benjamin Way was a competent witness. He had no interest in the event of the suit, and was not a party. The litigation was concerning the separate property of his wife, who, if not married, would have been a defendant. He is therefore made competent by section 1 of the act relating to evidence, and is not disqualified by section 2 or 5. *Mueller* v. *Rebhan,* 94 Ill. 142; *Gravel Road Co.* v. *Madaus,* 102 id. 417.

The Appellate Court, in suppressing the deposition of Benjamin Way, rely upon the cases of *Treleaven* v. *Dixon,* 119 Ill. 548, and *Warrick* v. *Hull,* 102 id. 280. Neither of these cases sustains the ruling of the Appellate Court.

This court enforced almost exactly such a contract as this in *Casner* v. *Preston,* 109 Ill. 531, and in *Kimball* v. *Cuddy,* 117 Ill. 213.

Messrs. ECKELS & KYLE, and Mr. JESSE EMERSON, for the appellees:

A gift *mortis causa,* in order to be valid, must have been made by the donor in apprehension of death; and in order to divest himself or herself of the title, there must have been a full and complete delivery. Everyting must have been done by the donor which was necessary to divest himself or herself of the title and to vest the title in the donee, and the proof of an intentional delivery on the part of the donor, and with a view to perfect the gift, must be clear and unequivocal. 3 Redfield on Wills, p. 344, and cases cited.

When an attempt is made to effect a distribution of property of an estate different from that provided by law, under a contract resting in parol or to be established by parol evidence,

the evidence relied upon should be looked upon with jealousy, and weighed in the most scrupulous manner. *Woods* v. *Evans,* 113 Ill. 187.

Where the contract relied upon to establish the right of property, in a channel different from that provided by law, is sought to be established by the verbal testimony of the claimant of such property and the immediate members of his family, such evidence should be looked upon with great jealousy. *Wallace* v. *Rappleye,* 103 Ill. 229.

The specific performance of a contract in equity is not a matter of right in the party seeking it. A contract which is not fair and just in all its provisions will not be specifically enforced in a court of equity. *Wallace* v. *Rappleye,* 103 Ill. 229; *Stone* v. *Pratt,* 25 id. 34; *Lear* v. *Chouteau,* 23 id. 39.

No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf, by virtue of section 1, chapter 51, of the Revised Statutes, when any adverse party sues or defends as the heir, legatee or devisee of any deceased persons. Rev. Stat. 1880, chap. 51, sec. 2, p. 505; *Treleavan* v. *Dixon,* 119 Ill. 548.

The husband can not be a witness in favor of his wife, to any admissions or conversations of the other, whether made by him to her, or by her to him, or by either to third persons, except in suits or causes between such husband and wife. Rev. Stat. 1880, proviso to sec. 5, chap. 51, p. 507; *Treleavan* v. *Dixon,* 119 Ill. 548.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed January 6, 1885, in the Circuit Court of Bureau County by Malvina Harriman, Pearley Townsend and William Watts against Jane B. Way, and also against Carlos Sampson, Helen Way, Albert Watts and Robert Farwell. All the parties, except Farwell, are the children of Sarah B. Watts, deceased, three by her first husband, named Sampson, and four

by her second husband named Watts. Farwell is administrator of the estate of Mrs. Watts. This appeal from the Appellate Court is taken by Jane B. Way alone.

On May 28, 1884, Sarah B. Watts, then a widow nearly eighty years old, went to the home of her son-in-law Benjamin Way and of her daughter, Jane B. Way, the appellant in this case, who lived on a farm in the State of Kansas. Mrs. Watts lived with the appellant and with the appellant's husband, Benjamin Way, upon the Kansas farm from May 28, 1884, to August 14, 1884, on which latter day she died intestate. The three complainants and Albert Watts and Farwell live in Bureau County, Illinois, Sampson in Iowa, Helen Way in Dakota and appellant in Kansas, as already stated.

Mrs. Watts owned in her lifetime $680.00 in money, and two notes, one against Henry Harriman, husband of the appellee, Malvina Harriman, and the other against Charles R. Townsend, husband of the appellee, Pearley Townsend. She had the money and the Townsend note in her possession, when she arrived at the Way farm in Kansas. At that time the Harriman note was in the hands of a lawyer, named Emerson, in Bureau County, Illinois, with whom it had been left for collection. Emerson was written to for the note and forwarded it on July 1, 1884, to Mrs. Watts, who received it in Kansas about July 3, 1884. After the death of Mrs. Watts, the notes and money were in the hands of appellant, who claimed to be the exclusive owner of them under a contract alleged to have been made with her mother, as hereinafter set forth. Appellant sent the notes to the said Farwell, an attorney in Bureau County in this State, for collection. Farwell as administrator, for the use of Jane B. Way, brought suits and obtained judgments upon both notes, and has collected $1252.05 upon the Harriman judgment and $1125.00 upon the Townsend judgment.

The bill sets up the foregoing facts in substance and also alleges, that the notes and money were the property of Mrs.

Watts at the time of her death; that the money and notes, or the proceeds of the collection of the notes, belong to the heirs at law of Mrs. Watts, including appellant, after payment of debts, and should be distributed, as required by law; that appellant fraudulently obtained possession of said notes and money before the death of Mrs. Watts, or took possession of them after her death with the fraudulent intent to deprive the other heirs-at-law of their interests therein. The bill prays that the money collected on the judgments may be declared to be the property of the estate of Mrs. Watts and that it may be distributed to her heirs, and that Farwell be enjoined from paying to appellant, etc.

Appellant in her answer denies that Mrs. Watts owned the notes and money at the time of her death, but alleges that Mrs. Watts before her death gave and delivered the notes and money to the appellant for the purpose of vesting the exclusive ownership thereof in appellant, and that this was done in pursuance of a contract between appellant and Mrs. Watts, made at the latter's suggestion soon after coming to Kansas, "to which respondent's husband assented and was a party, to the effect that Mrs. Watts was to give to this respondent the money and promissory notes * * * in consideration of which respondent and her husband were to furnish a home for Mrs. Watts with them, were to board and lodge her, furnish such clothing as she needed, to nurse and take care of her in sickness, to furnish medical treatment and attention, to make her as comfortable as circumstances would permit during the balance of her life, and when she died to have her body decently buried. Further, respondent says that she and her husband furnished Mrs. Watts a home with them as long as she lived, and did all that could be done to make her comfortable, supplied all her wants, carefully and tenderly nursed her during her sickness, employed for her the best medical attendance and treatment obtainable in the county, and when she died, decently buried her body and did all that could be done or

was to be done on their part in the performance of said arrangement."

The Appellate Court has reversed the decree of the Circuit Court which dismissed the bill for want of equity. The question presented by the record is, whether the money on hand at the death of Mrs. Watts and that realized from the notes since her decease, belong to appellant or to the estate of Mrs. Watts. Before appellant can be held to be the exclusive owner of the funds in question, the contract set up in her answer must be clearly established by the evidence.

The contract, upon which appellant relies, is admitted to have been a verbal one. The only witnesses, by which it is sought to prove it, are the appellant herself, her husband Benjamin Way, and her two sons, Elbert Way and Newton Way.

The appellant is clearly an incompetent witness under the second section of chapter 51 of Rev. Stat., entitled "Evidence and Depositions." She is a party defendant to the suit and the adverse parties suing are the heirs of her deceased mother. (*Freeman* v. *Easly*, 117 Ill. 317).

We also think that Benjamin Way, the husband of appellant, is an incompetent witness. The fifth section of the 51st chapter of the Revised Statutes provides, that, in certain cases therein mentioned, "the husband and wife may testify for or against each other in the same manner as other *parties* may under the provisions of this act." In *Treleaven* v. *Dixon*, 119 Ill. 548, we held that the word, "party," as here used, means, "party to a suit or party in interest in the suit," and we there said: "Giving it that meaning, other parties can not testify in any civil action, suit or proceeding of their own motion, or in their own behalf, when any adverse party sues or defends as the executor of a deceased person, and therefore husband and wife can not testify for or against each other in those instances." Of course, under section 2, the same is true as well where the adverse party is the heir of a deceased person as where he is the executor of a deceased person.

It makes no difference that the testimony of appellant and her husband is in the record. This being a chancery proceeding, we are required to assume that all the incompetent evidence was rejected on the final hearing. If there is not competent evidence in the record sufficient to sustain the decree, it must be reversed. (*Treleaven* v. *Dixon, supra*).

The testimony of appellant and her husband being disposed of, there remains only the evidence of the two sons, which is not sufficient to establish the contract contended for. An attempt is here made, under cover of a parol contract, to effect a distribution different from that which the law makes. Under such circumstances the proof must be clear and the testimony must be direct and positive. (*Wallace* v. *Rappleye*, 103 Ill. 229). "Where an attempt is made to effect a distribution different from that provided by law, by a contract resting in parol, the evidence relied upon to establish such a contract is looked upon with jealousy and should be weighed in the most scrupulous manner." (*Woods* v. *Evans*, 113 Ill. 186). The depositions of Elbert and Newton Way, which were taken in Kansas under a commission, will not bear the test of the strict rule thus laid down.

These boys do not claim to have been present at the time the alleged contract was made between their mother and grandmother. They merely testify that they heard their grandmother say she had given the notes and money to their mother. They represent that what their grandmother said was said at the dinner table, at a time when, according to the testimony of the physician and according to statements made in letters written by appellant, Mrs. Watts must have been too ill to leave her bed. Their cross-examination shows that much of what they say about the agreement was told them by their mother. As to some of their statements they are flatly contradicted by one Wilson Fisher, who appears to be an entirely disinterested witness. They swear, that they heard their grandmother say she had given the money to appellant, and

yet five witnesses swear that, before the burial of Mrs. Watts, they heard appellant say she never knew Mrs. Watts had any money, until the $680.00 was found in her trunk after her death.

Further comment upon the testimony of the two sons is unnecessary. It is sufficient to say, that, in our opinion, it is not sufficiently satisfactory and conclusive to sustain the contract set up by appellant. It leaves the mind too much in doubt to justify us in depriving these appellees of their lawful inheritance. We think the Appellate Court has reached the correct conclusion in the matter, and the judgment of that court is accordingly affirmed.

*Judgment affirmed.*

BAKER, J., took no part in the consideration of this case, he having participated in the decision made by the Appellate Court.