CURL RICHARDSON ET AL.

v.

KATE RICHARDSON ET AL.

*Negotiable Instruments—Notes of Deceased Held by His Widow, Void for Want of Consideration—Power of Court of Equity to Compel Their Payment Out of Widow's Share of Estate—Parol Ante-Nuptial Contract —Statute of Frauds—Weight of Evidence—Widow as Witness.*

1. Where a widow sells notes, given to her by her husband in his lifetime, before maturity, to an innocent purchaser, which notes were without consideration, such sale is fraudulent as against the heirs of the husband, and a court of equity has power to compel the payment of the same out of the distributive share of the widow in her husband's estate, less the one-third part she was entitled to as his widow.

2. A parol ante-nuptial contract, by which the husband agreed to settle upon his wife a sum in excess of what would be her legal share in his estate, is void under the statute of frauds, and the marriage of the parties does not take the contract out of the statute.

3. A widow is not competent to testify that her husband, in his lifetime, gave money to her, and that she loaned it back to him, and that he gave her notes for the same, where the question in issue is as to the consideration of such notes.

4. Upon the case presented, this court holds that the competent testimony in the case was not sufficient to justify a finding that the notes in question were given for a good consideration.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Jo Daviess County; the Hon. JAMES SHAW, Judge, presiding.

Mr. E. L. BEDFORD, for appellants.

Messrs. D. & T. J. and J. M. SHEEAN, for appellee Kate Richardson.

MR. JUSTICE HARKER. This was a bill in chancery filed by appellants, four of the heirs of Norman B. Richardson, deceased, to compel Kate Richardson, widow of the deceased, to account for and pay out of her distributive share the amount of a judgment, recovered against the estate upon two promissory notes, aggregating in amount $25,100, executed and delivered to her by the deceased in his lifetime, and after his death assigned by her to the First National Bank of Shullsburg, Wis. The bill avers that the notes were executed without consideration; that they were assigned before maturity in order to cut off the defense, which would defeat a recovery in a suit by the original payee, and that such assignment, without disclosing the facts under which they were executed, whereby the estate became liable to pay them, was a fraud against the estate and the heirs. The widow, the Shullsburg Bank, Ezra R. Carr, administrator of the estate, and two heirs, were made defendants. It is not necessary to consider any

other answer than that of the widow, for it was upon the issues raised by the bill and her answer that the cause was tried. Answering, she denied any fraudulent act or intent upon her part and averred that the notes were executed and delivered to her by the deceased for a good and valuable consideration. The Circuit Court found for the defendants and dismissed the bill for want of equity. The following are the undisputed facts as disclosed by the record before us. In 1888, Norman B. Richardson, a resident of Warren, Ill., was worth from $175,000 to $200,000, his property consisting mainly of bank deposits and interest-bearing notes secured by mortgages. He had accumulated his fortune through many years of active, frugal and careful business management. He was then and had been for a long time before, engaged in the banking business. He was about seventy years of age, and a widower, his wife having died in 1885. During the spring of that year a correspondence sprang up between him and a Miss Kate Matheson, a young lady then engaged in the millinery business at Brooklin, Canada. He had met her several years before, when a girl twelve years of age, visiting a sister at Warren. As a result of the correspondence he visited her in Canada, and there married her November 28, 1888. They came on to Warren, and there lived together in his old home until his death, May 3, 1890. After his death, a few weeks, she exhibited, sold and assigned to the First National Bank of Shullsburg, Wisconsin, two promissory notes executed and delivered to her by her husband, one for $100 and one for $25,000, bearing date February 22, 1889, due in three years and bearing eight per cent interest from date. The bank filed the notes for probate in the County Court. The claim was resisted, but after trial, allowed. On appeal to the Circuit Court, the bank was again successful, and on June 12, 1891, recovered a judgment against the estate for $28,389.66.

As we view this controversy the only serious question involved is, whether the notes were given without a valuable consideration; because, if they were, the assignment of them by Mrs. Richardson before maturity was fraudulent,

Richardson v. Richardson.

and we entertain no doubt of the power of a court of chancery to compel her to respond to the estate to the amount of any judgment which the estate has suffered by reason of her wrongful and fraudulent act in that regard. We think too, the court has power to stay out of her distributive share an amount sufficient to pay the judgment, less, of course, the one-third part she would be entitled to as widow of the deceased. As far as the note for $25,000 is concerned, we are of the opinion that the presumption of its being given for value was overcome by proof that Mrs. Richardson, at the time of her marriage, had but little means; that the maker was possessed of such wealth and ready money that there was no probability of his borrowing that sum of money from any one, and that she had stated to several different persons that the note was given to her as a present from her husband. The evidence shows that all the property owned by her at the time of her marriage consisted of a small amount of millinery goods and furniture, not exceeding in value $400. These she sold and invested part of it in chinaware and a bed-room set. Her people were quite poor and there appears to have been no source from which she could have obtained money except her husband. Two disinterested witnesses, Mrs. Irene Matthews and Mrs. J. P. Kerlin, testify positively that she admitted to them that the note was a present from her husband, and John Hogan, a young man who on the day after Richardson's death, at the instance of the widow, procured the note from a dressing-case drawer in the house and brought it to her, testified that she gave him to understand that the note was given to her as a present. Mrs. Richardson was introduced as a witness in her own behalf. She denied making the statements sworn to by the above named witnesses, that the note was a present. She also testified to a parol agreement made between her and Richardson prior to the marriage, that in consideration of her marrying him he would settle upon her over and above the amount which the law would give her out of his estate at the time of his death, an amount sufficient to make her

interest $80,000, and that it was in consideration of such agreement alone that she did marry him; that after their marriage he, in pursuance of the agreement, gave her at different times large sums of money, aggregating over $25,000, and that she loaned it back to him. The parol ante-nuptial agreement set up was void under the statute of frauds of Illinois, the forum in which the case was tried. 1 Starr, & C. Ill. Stats., 1187; McAnnulty v. McAnnulty, 120 Ill. 26. That marriage is not sufficient to take such an agreement out of the statute is firmly established. McAnnulty v. McAnnulty, *supra;* Henry v. Henry, 27 Ohio, 121; Crane v. Gough, 4 Md. 316; Lloyd v. Fulton, 91 U. S. 479; 2 Parsons on Contracts, 72. If the note was given with no other consideration to support it than the void ante-nuptial contract it was void also. McAnnulty v. McAnnulty et al., *supra.* The fact of such ante-nuptial agreement being made could only be received in evidence as corroborative of the contention that Richardson, after the marriage, gave large sums of money to his wife. It furnished a reason for the alleged conduct of Richardson in giving her such large sums of money. The difficulty in the way of the proof, however, was that Mrs. Richardson was the only witness who testified to the promise. She was not a competent witness for that purpose. Nor was she competent to testify that Richardson gave her the money, that she loaned it back to him, and that the note was given in consideration of such loan. She was sued by the heirs of a deceased person and comes directly within the inhibition contained in the second section of Chapter 51 of our Revised Statutes relating to evidence and depositions. Connelly v. Dunn, 73 Ill. 218; Treleaven v. Dixon, 119 Ill. 548; Bernard v. Bernard, 119 Ill. 92; Way v. Harriman, 126 Ill. 132. Her testimony in those regards did not fall within any of the enumerated exceptions of section two, as did her testimony denying the statement sworn to by John Hogan, Mrs. Matthews and Mrs. Kerlin. Notwithstanding her contradiction of the testimony of the three witnesses named, and the other testimony introduced by her to weaken them, we are satisfied

she made the statements sworn to by them. That she should make such statements we do not think at all unreasonable, in view of the fact that it was being charged against her that the notes were not delivered in the lifetime of her husband. It devolved, then, upon Mrs. Richardson, after the proofs made by appellants, to show affirmatively a valuable consideration for the note. This she undertook by the testimony of her niece, Nellie Hockin, a young girl from Canada, whom she procured to live with her shortly after her marriage. She testified that Richardson at one time asked her if she did not think it strange that a girl so young as her aunt would marry an old man like him; to which she replied that she did, when he told her that her aunt should never be sorry for marrying him, because he intended to give her more than one-third of his estate by will or otherwise. She then related a very remarkable story to the effect that in January, 1889, shortly after her arrival from Canada, Richardson came into the house and finding his wife sitting at a bay window handed her $10,000 in cash, telling her that the money was hers; that Mrs. Richardson called upon witness to help count it, and that after counting it Mrs. Richardson put the money in the bottom of an empty trunk, where it remained in an unoccupied room for several weeks; that within a day or two afterward, he handed her $8,000 more, which Mrs. Richardson intrusted to the witness, who kept the amount in her trunk; that the money was all loaned out from time to time to Richardson by her aunt; that he at different times gave her other sums of money which he subsequently borrowed from her. Such is the testimony which, it is contended, furnishes ample proof of a consideration for the note. In our opinion it is so at war with common experience, the business habits of Richardson and surrounding circumstances, as to render it unworthy of belief.

There are other features in the evidence bearing upon the question to some extent which we have carefully considered, but it would render this opinion too lengthy to discuss them in detail. In our judgment, the testimony which was

proper and worthy of belief was entirely insufficient to show a consideration for the $25,000 note, and the Circuit Court should have so found and rendered a decree compelling the widow to respond out of her share of the estate to an amount equal to what the estate has suffered by reason of her assignment of the note.

As to the $100 note, the decree should be otherwise. As to it we do not think appellants sustained their bill. The amount is not inconsistent with the means she had at the time of her marriage, or the probability of her having it to loan at the time the note was executed.

The decree will be reversed with directions to the Circuit Court to grant the relief so far as it appertains to the $25,000 note, and deny it as to the $100 note, and apportion costs as to the Circuit Court may seem proper.

*Reversed with directions.*