### BUFFINGTON *v.* BUFFINGTON, EXECUTOR.

[No. 18,473. Filed October 7, 1898.]

HUSBAND AND WIFE.—*Antenuptial Contracts.*—No formality is required in antenuptial contracts, and the rule of construction is to ascertain and give effect to the intention of the parties, such contracts being favored by the law as promoting domestic happiness and adjusting property rights which would otherwise often be the source of fruitful litigation. *p. 202.*

SAME.—*Antenuptial Contracts.*—*Statutory Allowance.*—The statutory allowance of $500.00 payable to a widow from the estate of her deceased husband is waived by a provision in an antenuptial contract "that she hereby releases any and all claims to the property of the said William C. Buffington, her intended husband." *pp. 203, 204.*

SAME.—*Antenuptial Contract.*—*Signing After Marriage.*—The fact that an antenuptial contract was not signed until after the marriage would not render the same defective. *p. 204.*

SAME.—*Antenuptial Contract.*—*Breach Of.*—*Forfeiture.*—An allegation of a breach of a stipulation in an antenuptial contract to support the wife will not support a claim of forfeiture of the contract, where such stipulation was not a condition upon which the validity of the contract was made to depend. *p. 205.*

From the Dearborn Circuit Court. *Affirmed.*

*Stephen H. Stewart* and *Omar F. Roberts* for appellant.

*Charles F. Hayes* and *Thompson & Colt,* for appellee.

HACKNEY, C. J.—This was an action to quiet the title to certain real estate, and to subject the same to sale for the payment of the debts of the estate represented by the appellee. The appellant, the widow of the decedent, William C. Buffington, was alleged to have entered, prior to her marriage with the de-

cedent, into an antenuptial contract with him, which contract, in order to complete the same, was, after said marriage acknowledged before a notary public. Said contract is as follows: "Know all men by these presents that whereas, William C. Buffington, of Dearborn county, Ind., and Martha J. Higbee, of Ohio county, Ind., are about entering into marriage, and that in view of such marriage the following contract and antenuptial agreement is entered into by and between the said parties, to wit: The said William C. Buffington, on his part, agrees to maintain his said wife, Martha J. Higbee, in a manner suitable to his means and station in life, and he further agrees that he will release any and all interest in property owned by her, and that she can hold any and all personal property that she may bring to the house of said William C. Buffington, and that she have control of her said property without restraint; and the said Martha J. Higbee on her part agrees and contracts, in consideration of the foregoing, that she hereby releases any and all claims to the property of the said William C. Buffington, her intended husband; and, further, that they each reserve the power and right to dispose of and control their separate property, respectively, during marriage, and that the right of each is reserved to make wills, if they see proper, of their estate.

"In witness whereof, the said William C. Buffington and Martha J. Higbee have hereunto set their hands and seals on November 9, 1878. William C. Buffington (seal), Martha J. Higbee (seal)."

The instrument was acknowledged, the date not appearing, by William C. and Martha J. Buffington. The effect of this contract upon any interest which the widow would otherwise have had in the real estate of the decedent, and upon her claim to the stat-

utory allowance of $500 are questions for decision, as presented in various forms.

The appellant's learned counsel insist upon a strict and narrow construction of the contract, so as to limit it to the control of property during wedlock, and so that any concessions in this respect, made by the appellant, were upon the consideration of the executory promise of the decedent to thereafter relinquish any interest in or control over her property for such period, such executory promise never having been complied with.

It is the firmly-established rule in this State that antenuptial contracts are not in such disfavor as to require rigid construction. On the contrary, they are favored by the law as promoting domestic happiness and adjusting property questions which would otherwise often be the source of fruitful litigation. No formality is required, and the rule of construction is to ascertain and give effect to the intention of the parties. See *Kennedy* v. *Kennedy*, 150 Ind. 636; *McNutt* v. *McNutt*, 116 Ind. 545, 2 L. R. A. 372, and authorities there cited. Looking to the contract with reference alone to the custody, control, and disposition of the property during wedlock, there was no occasion for the contract. In this respect the rights and duties of the parties were, by the law, as the contract would have made them. This conclusion is, of itself, strongly influential in determining that the parties were intending to contract with reference to the disposition of their property, respectively, upon the death of either. As far as may be, parties are presumed to contract with reference to ends which do not necessarily occur without contract. The clause in the contract whereby the appellant "releases any and all claims to the property of" her intended husband could not reason-

ably have spoken an intention to affect existing interests, for there were no present interests in her favor in his property.   The clause in which each reserved the right to dispose of his or her property, by will very clearly had in view the adjustment of property rights after the death of either.   Nor do we believe it to have been intended that the contract on the part of the decedent was executory as to the relinquishment of his rights in the property of the appellant.   Ordinarily, the phrase "will release," without qualifying words, would express a future purpose, but, considering the fact that they were engaged in executing an antenuptial agreement or marriage settlement, and the many other features of the instrument indicating a purpose to adjust all property interests in their respective estates, we are satisfied that the obligation upon his part was not executory in the sense that another act was contemplated to make it effective.   We do not consider whether the obligation upon her part is not sufficient to preclude her, even if her construction that his obligation was executory were correct.

As to the claim for the $500, allowed by statute, section 2424, Burns' R. S. 1894, we need not dissent from the proposition that it is a special and preferred claim, analogous to dower, and payable from the personal and real estate of a deceased husband. The essential inquiries are, can it be waived by antenuptial contract, and was it so waived by the appellant?   That it may be waived by the acceptance of testamentary provision inconsistent with its allowance has often been decided.   *Shafer* v. *Shafer*, 129 Ind. 394; *Hurley* v. *McIver*, 119 Ind. 53; *Langley* v. *Mayhew*, 107 Ind. 198.   This question depends upon the intention of the parties.   In the case of *Houghton* v. *Houghton*, 14 Ind. 505, involving an antenuptial

agreement, and a claim for the statutory allowance, it was said to be "undoubted law, that it was always competent for the husband, by an antenuptial contract, to purchase his wife's personal fortune.   *   * If he could buy hers, it would surely be competent for him to buy out her interest in his own."

It follows from these conclusions that the claim may be waived by stipulations which are valid, and in lieu of the legal interest of the prospective wife in the estate of the husband.   It only remains to be determined whether the contract in question is broad enough to comprehend this claim, and we do not hesitate to say that it is.   The language is that "she hereby releases any and all claims."   This is broad and comprehensive, and when read in the light of an intention to adjust rights following the death of the husband it precludes her.

The appellant alleged that the instrument purporting to be an antenuptial contract was made and signed after the marriage; that the same was made to enable the parties to manage and control their separate estates respectively, during the marriage, and no longer; that he agreed to maintain her in a manner suitable to his means and station in life but failed to do so; that he failed to release all interest in her property and estate as agreed; that she expended her separate means for the support of herself and the decedent, and she asks an accounting and the protection of her rights under the contract.

The denial of the execution of the contract is not broad enough to avail.   It is conceded that parties contemplating marriage may orally agree as to the disposition of property, and may confirm such agreement in writing after marriage.   *Claypool* v. *Jaqua*, 135 Ind. 499.   Under this concession the allegation does not deny the validity of the contract, for the

mere signing, subsequent to the marriage, would not defeat it as the ratification of the original agreement. It may be doubted, also, whether the unverified denial of the execution of the agreement is sufficient, under section 367, Burns' R. S. 1894. Allegations depending upon the mere construction of the agreement, such as to the intention to contract for control during wedlock, and as to the agreement to release, on the part of the decedent, are in contradiction of the legal effect of the instrument, and are not statements of facts.

The stipulation as to support was not a condition upon which the validity of the contract was made to depend, and the allegation of a breach would not support a claim of forfeiture. Nor would the expenditure of money, for which she was not liable, even if it constituted an enforceable claim against the estate, be a defense to the proceedings, or so far germane to the complaint as to supply the basis of a cross-complaint. The property of decedent is not subject to a life estate or to the statutory allowance in appellant's favor, but passes, under the will, to the devisees therein named. There is no error in the record, and the judgment is affirmed.