EDWARD FRAZER ET AL., Appellees, v. LOUISA J. ANDREWS
ET AL., Appellants.

**Husband and wife:** ANTE-NUPTIAL AGREEMENT: STATUTE OF FRAUDS.
1    The ante-nuptial oral agreement that neither of the parties
nor their heirs shall have any interest in the property of the
other as a result of their marriage is within the statute of
frauds and cannot be proven, even though the same is reduced
to writing after marriage, unless the writing recites that it is

to furnish evidence or is in consideration of the prior oral agreement.

Pleadings: FORM. A pleading which assails certain clauses of a
2 petition and not the entire cause of action should be treated
as a motion to strike rather than as a demurrer, although so
· denominated.

*Appeal from Henry District Court.*— HON. JAMES D. SMYTHE, Judge.

TUESDAY, JUNE 4, 1907.

ACTION· to partition certain real estate. Defendant Eliza D. Smith filed a demurrer to plaintiff's petition in so far as plaintiffs, except Albert Frazer, claimed more than one-seventh of two-thirds of the real estate, and to the petition of said Frazer in so far as he claimed more than two-sevenths of two-thirds of the real estate. This demurrer was overruled, and, said Smith electing to stand thereon, judgment was entered as prayed in plaintiff's petition. Smith appeals.— *Reversed.*

*W. F. Kopp,* for appellants.

*Babb & Babb,* for appellees.

DEEMER, J.— Plaintiffs are the children of Mary M. Coffin, formerly Mary M. Frazer, who died intestate August 2, 1904, leaving surviving seven children, five of whom are plaintiffs and two, Eliza D. Smith and Alson G. Frazer, are defendants. Before the bringing of the suit Alson G. Frazer had conveyed his interest in his mother's estate to plaintiff Albert H. Frazer. It is alleged that each of said children was entitled to an undivided one-seventh of the real estate of their mother, save Albert Frazer, who was entitled to two-sevenths. It is also alleged that Mary M. Coffin left surviving her husband, John M. Coffin, who soon thereafter also died intestate, leaving a number of children and grand-

children, all of whom are made defendants; they being his children and grandchildren by a former marriage. All of said children and grandchildren, save Alice Randolph, had prior to the beginning of this suit transferred their interests to defendant and appellant Eliza D. Smith. It is alleged that neither John M. Coffin nor his heirs had any interest in the land in suit. We now quote the following from the petition which goes to the very vitals of the controversy.

That the said Mary M. Frazer and the said John M. Coffin were intermarried to each other on August 26, 1896, that at said time each of said parties were of advanced years, and each had a number of children by a former spouse, and also that each was the owner of certain real and personal property; that the real estate in question was then owned by the said Mary M. Frazer; that they were each desirous that neither should acquire any right or interest in the property of the other, and they agreed in parol prior to their marriage. that each of them should hold absolutely all the real and personal property owned by each of them, respectively, at the time of their marriage, free from any right, claim, dower, homestead, distributive share, or other interest in the property of the other, and that upon the death of either of them the children of such deceased one should take all the property of the one so dying, free from any claim, right, or interest of any kind of the survivor of said two-named parties; that said agreement was made in consideration of said contemplated marriage and of their mutual relinquishment of their rights in the property of the other; that subsequent to said agreement and in pursuance thereof the said parties intermarried on August 27, 1896, and that after their marriage, for the purpose of preserving the written evidence of said oral agreement made before their said marriage and to carry the same out, they reduced said agreement to writing as evidence of said oral agreement so made by them before their marriage.

The written agreement referred to, which was executed March 29, 1897, was signed by Mary M. Coffin and John M. Coffin, witnessed by two disinterested persons, and reads as follows:

This article of agreement made and entered into by and between Mary Coffin and John Coffin, her husband, of the county of Henry and State of Iowa, do each of them agree to relinquish to the other and their heirs all their rights, title, interest, in the real estate owned by each of them at the time of their marriage, 27th day of eighth month, 1896, as either one would heir according to law as husband and wife.

The demurrer challenges the claims made under and in virtue of these agreements, because the oral one is void under the statute of frauds and the written one is void under section 3154 of the Code prohibiting such

1. HUSBAND AND WIFE: antenuptial contracts: statute of frauds.

contracts between husband and wife. It questions all claims made in virtue of these agreements. Our statute of frauds expressly provides that all contracts made in consideration of marriage must be in writing and signed by the party to be charged; and it also provides that those for the creation or transfer of any interest in land must also be in writing and be signed as above provided. Section 3154 provides that, when property is owned by husband or wife, the other has no interest therein which can be the subject of contract between them. It is perfectly plain that the oral contract made before the marriage by and between Mary M. Frazer and John M. Coffin, which was in parol was and is of no validity; and the consummation of the agreement to marry by ceremonial or other marriage, did not make the contract good. Section 4626 of the Code, relating to the effect of part performance, does not apply to contracts made in consideration of marriage.

Again under section 3154 the written contract between these parties, which was concededly made after marriage, was of no validity; as it is expressly forbidden. We have held, however, that if after the making of a parol antenuptial agreement the parties after marriage reduce it to writing, and in the writing recognize and put in force and give effect to the previous parol one, the written one will be given effect as

an antenuptial, and not a postnuptial, one. See *Kohl v. Frederick,* 115 Iowa, 517. The present case involves a somewhat different question, in that there is nothing in the writing itself which shows that it was executed to give effect to and make of writing a previous parol antenuptial agreement. In such cases the authorities from other States are in hopeless conflict, and we have not heretofore had occasion to pass upon the subject. Among those cases holding such an instrument good are *Moore v. Harrison,* 26 Ind. App. 408 (59 N. E. 1077); *Buffington v. Buffington,* 151 Ind. 200 (51 N. E. 328); *Cooper v. Wormold,* 27 Beav. 266; *Argenbright v. Campbell,* 3 Hen. & M. (Va.), 144. To the contrary are *McAnnulty v. McAnnulty,* 120 Ill. 26 (11 N. E. 397, 60 Am. Rep. 552); *Powell v. Meyers,* 23 Ky. Law, 795 (64 S. W. 428); *Smith v. Greer,* 3 Humph. (Tenn.), 118; *Borst v. Corey,* 16 Barb. (N. Y.), 136. In view of this conflict, it is manifest that apparently sound reasons may be given for either conclusion. We quote the following from *Moore v. Harrison, supra:*

Antenuptial contracts are favored by the law. They adjust property questions and promote domestic happiness. In such contracts no formality is required, and a liberal construction will be given them in every case, giving effect, if possible, to the intention of the parties. *Buffington v. Buffington,* 151 Ind. 200 (51 N. E. 328); *Kennedy v. Kennedy,* 150 Ind. 636 (50 N. E. 756); *McNutt v. McNutt,* 116 Ind. 545 (19 N. E. 115, 2 L. R. A. 372). The rule is well established that parties contemplating marriage may orally agree as to the disposition of their property, and they may confirm such agreement in writing after marriage. *Buffington v. Buffington, supra; Claypool v. Jaqua,* 135 Ind. 499 (35 N. E. 285). Such contracts are upheld in equity, *Leach v. Rains,* 149 Ind. 152 (48 N. E. 858), and it is not necessary to their validity that anything should have been paid by the wife to the husband, or that the consideration therefrom should be stated in the contract. 6 Am. & Eng. Ency. Law (2d Ed.), 758. It is the rule in Indiana that either party may show the true consideration for any

purpose, except to defeat the operation of the conveyance. *Nicolas v. Burch,* 128 Ind. 324 (27 N. E. 737) ; *Smith v. McClain,* 146 Ind. 77 (45 N. E. 41). In the case at bar the agreement was mutual, entered into before marriage, but in contemplation of marriage. The agreement to marry was the consideration for the contract, which provided for the disposition of the property of the contracting parties. After the marriage the contract was reduced to writing. The evidence which was introduced over appellant's objection did not, as is contended by counsel for appellant, tend to change or vary the terms of the written contract, and was not introduced for that purpose, and could not have been used to prove the terms of the contract. It simply went to the question of consideration. We think the contract entered into between the husband and wife in this case a valid and enforceable one, and that the evidence objected to was properly admitted for the purpose of showing the consideration for the contract, if, indeed, it was necessary, under the issues, for the appellee to make such proof.

The other view is represented by the following from the *McAnnulty case, supra:*

As this instrument was not executed until about a month after the marriage, it is clear that, if any agreement existed before or at the time of the marriage, it was a mere verbal agreement and as such it is obnoxious to the statute of frauds. . . . This alleged antenuptial agreement clearly comes within the provisions of this section, and the statute must be given effect unless something has occurred to take the case out of its operation. The signing of the written instrument after the marriage can be regarded at the very farthest as nothing more than a mere acknowledgment in writing of the terms of the previous verbal agreement, and this certainly does not meet the requirements of the statute, for the simple reason the statute requires the contract itself to be in writing. And by the following from the *Powell case, supra:* " The verbal antenuptial contract, as held in the cases referred to, is within the provision of the statute of frauds, and no action can be maintained upon it. . . . The evidence warrants the conclusion that the written contract was made pursuant to

the antenuptial verbal agreement, and, though no action could be brought upon the verbal agreement to charge the husband, equity will not relieve him from the written contract made pursuant to it and after it has been fully executed. By the writing quoted Mrs. Powell's property was settled upon her and her heirs at law. It was held by her as long as she lived, and at her death, by the consent or acquiescence of her husband, passed into the hands of her sister, Mrs. Meyers, as her heir at law. When this was done, the contract was fully executed and the settlement which the husband voluntarily made equity will not aid him to disturb, when the agreement is no longer executory, and he has entered upon another conjugal relation.

The nearest approach to a decision of the instant case is found in *Allen v. Bemis,* 120 Iowa, 172, wherein we said:

Plaintiff offered in evidence the writing, a copy of which appears in his petition, and is hereinbefore set out. This was objected to and the objection sustained. The grounds of the objection were that by the terms of the writing no obligation on the part of the defendant is created, and that the same does not, by its terms, constitute an agreement or memorandum of an agreement by defendant for the transfer of an interest in lands as required by the statute. It is not claimed by counsel for appellant that such writing of itself constitutes the contract for the breach of which this action is brought. It is their contention that the same is a written admission of the oral contract previously made as alleged, and that it is sufficient in character to establish the making of such oral contract. Passing the collateral question argued at some length in respect of the character of the agency of Miller and the lack of definite description of the property, we readily reach the conclusion that no effect can be given the writing such as appellant contends for. It contains no reference to any prior agreement, and by its terms is confined to matters then presently under consideration. . . . That parties may by writing make admission of a prior oral contract or agreement to sell lands is not to be doubted. And an oral contract thus established may be enforced as of the time made

as fully as the subsequent writing makes disclosures thereof. It is well settled, however, that in all such cases the court cannot look beyond the writing to ascertain the terms, conditions, or provisions of the contract. . . . Being insufficient in and of itself to establish the making of the oral contract upon which the plaintiff grounds his action, it must be held that the objection thereto was properly sustained.

This same rule was also announced in principle in *Leather Co. v. Porter Bros.,* 94 Iowa, 117, wherein we said:

It is also the general rule that the evidence necessary to take a contract out of the statute of frauds must all be furnished by the writings; parol evidence not being admissible to supply evidence not found in them. Our statute provides that no evidence of contracts such as that alleged in this case is competent unless it be in writing and signed by the party charged, or by his lawfully authorized agent.

In passing, it may be remarked as worthy of consideration that in Indiana they have no statute similar to our section 3154, which may perhaps account for the rule in that State. Chancellor Kent in a learned opinion in *Reade v. Livingston,* 3 Johns. Ch. (N. Y.), 481 (8 Am. Dec. 520), reviewed all the authorities, and held, as we understand it, that such a contract as is now before us is invalid. See, also, *Warden v. Jones,* 2 Deg. & J. 76; *Winn v. Albert,* 2 Md. Ch. 169; *Albert v. Winn,* 5 Md. 66; *Andrews v. Jones,* 10 Ala. 400; *Wood v. Savage,* 2 Doug. (Mich.) 316. Looking to our statutes for a guide, we are of opinion that, unless the agreement made after marriage recites that it is to furnish evidence or is in consideration of a previous antenuptial contract it is within the statute of frauds, or prohibited by section 3154 of the Code, and cannot be enforced.

It is argued, however, that the demurrer in the case was properly overruled, for the reason that it did not go to plaintiff's entire cause of action, but was used simply as a pruning hook and was therefore properly overruled. That a motion is the proper

2. PLEADINGS: form.

method whereby to get rid of immaterial, redundant or superfluous matter is the general rule. Ordinarily, if plaintiff is entitled to any relief, a demurrer to his petition is properly overruled. But no court is tenacious as to names. The so-called demurrer here did not challenge plaintiff's right to recover at all, but went to the question of his rights in so far as based upon the contract in question. It no where challenges plaintiff's right to an interest in the land, but went to his right to recover a particular interest therein. Although denominated a demurrer, it was in effect a motion to strike certain clauses from the petition, and was as we understand it, and should have been so treated. The following authorities support this view: *Rhoadabeck v. Blair,* 62 Iowa, 368; *Seiffert Co. v. Hartwell,* 94 Iowa, 576; *Chase v. Kaynor,* 78 Iowa, 449.

Having given the case the attention which its importance demands, we reach the conclusion that the demurrer should have been sustained.

The judgment is therefore *reversed.*