Kennedy *v.* Kennedy *et al.*

## KENNEDY *v.* KENNEDY ET AL.

[No. 18,523.   Filed June 9, 1898.]

HUSBAND AND WIFE.—*Antenuptial Contract.—Equitable Jointure.*— A contract entered into by a husband and wife, prior to their marriage, in relation to their property rights, is not a settlement or jointure within the meaning of section 2661, Burns' R. S. 1894, which provides that before such settlement or jointure shall constitute a bar to the right or claim of the wife in the lands of her husband, she must give her assent in writing to receive the same in lieu of all right or claim in the lands of her husband. *pp. 641, 642.*

SAME.—*Antenuptial Contract.*—An adult wife may bar her legal rights in her husband's estate by an agreement entered into before marriage to accept other reasonable provisions in lieu thereof. *pp. 642, 643.*

SAME.—*Marriage Contract.—Construction.*—The court in construing a marriage contract will endeavor so to interpret it as to carry out the true intent of the contracting parties, without regard to the strict technical meaning of words therein employed. *p. 643.*

SAME.—*Marriage Contract.*—A man seventy-one years old, the father of five children by a former marriage, and the owner of real estate of the value of $15,000.00, of an annual rental value of $600.00, entered into a marriage contract with a woman forty-three years of age, whereby it was agreed that at the death of the husband the wife should have one-third of all the property acquired by them during such marriage, and an annuity of $200.00 during her life, or so long as she should remain a widow, the payment thereof to be secured by his heirs before taking possession of his estate; there were no children by virtue of such marriage. *Held,* that the provision made for the wife in the marriage contract was in lieu of her marital rights, and barred her from claiming or asserting her life interest, and her rights of quarantine in the lands of her deceased husband. *pp. 644-648.*

From the Rush Circuit Court.   *Affirmed.*

*John M. Stevens, John A. Titsworth, Douglas Mor-*

*ris, Samuel L. Innis* and *George W. Morgan,* for appellant.

*B. L. Smith, Claude Cambern, D. L. Smith, L. D. Guffin* and *J. E. Watson,* for appellees.

JORDAN, J.—This was an action in partition, instituted by the appellant, Sarah M. Kennedy, the widow of Archibald M. Kennedy, against the appellees, who are his children, and also legatees under his will. The complaint is in two paragraphs, but as appellant, through her counsel, has virtually waived all questions in respect to her alleged rights under the first paragraph, we give it no consideration. By the second paragraph of her complaint, appellee seeks to have assigned to her, for life, one-third of the real estate of which her husband died seized, and also to be awarded her quarantine rights, under the statute, in respect to the occupancy of the dwelling house of the deceased, and real estate adjoining thereto. This paragraph recites the provisions of an antenuptial contract executed by appellant and her deceased husband, and a copy thereof is filed as an exhibit. Appellees answered the complaint in two paragraphs, the first being a general denial. The second set out, and relied on as defense in bar to the action, the antenuptial contract mentioned in the complaint. Appellant unsucessfully demurred to this second paragraph of the answer, whereupon appellees withdrew their general denial; and she electing to stand by her demurrer to the answer, and refusing to further plead, judgment was renederd in favor of the appellees. The only question involved in the assignment of error is the construction of the marrige contract set up in the answer.

The facts averred in the answer may be thus summarized: On and prior to May 24, 1889, Archibald M. Kennedy, appellant's dec····ed husband, was a wid-

ower seventy-one years of age, and was the father, by a former marriage, of five adult children, the appellees in this action. He was the owner in fee simple at that time, and also at the date of his death, of the real estate of which appellant seeks partition, consisting of 240 acres, of the value of $15,000, and of an annual rental value of $600, and was also the owner, at the date of the contract, of a small amount of personal property. The appellant, at that date, was a widow forty-three years old, without children, and owned in her own right, property, real and personal, of the value of $1,000. On said 21st day of May, she and the said Archibald M. Kennedy, in contemplation of marriage, entered into and executed the contract in controversy; and on the next day they were duly married to each other, and became husband and wife, and lived together as such on the land in dispute until January 3, 1897, on which day Archibald M. Kennedy died, at Rush county, Indiana, leaving an estate, real and personal, of the value of $15,000, and leaving appellant surviving him as his widow, no children having been born to them as fruits of their marriage. On May 2, 1893, deceased executed a will in which he provided that the antenuptial contract, existing between him and his wife, should be faithfully carried out in every particular, and directed that his personal estate be sold and the proceeds be divided among his children, and that his wife should have all the property that she owned at the time of the marriage, and also one-third of the accumulations of their joint property, as in the contract provided, and in addition, he bequeathed to her a large portrait of herself and her said husband; and he further directed, in his will, that his funeral expenses be paid out of his said property, and that no part of said expenses be charged to the joint property accumulated since the marriage.

The will further provided that after the provisions of the marriage contract had been complied with, and after a good and sufficient bond had been filed with the court for the faithful payment of the annuity mentioned in the antenuptial contract, which annuity, the will directed, should be paid semiannually, after the filing of such bond, the testator directed that appellees, his children, naming them, should be entitled to take charge of the property and divide it equally among them. This will was duly probated the 12th day of January, 1897, in the Rush Circuit Court, and on the same day, appellees executed to appellant a bond in the sum of five thousand dollars, conditioned for the payment semiannually to her of the annuity as provided in the marriage contract, which bond was, on the same day, accepted in writing by appellant as being sufficient for carrying out the provisions of said contract and the provisions of any will made by her deceased husband. On July 10, 1897, appellant filed in the office of the clerk of the Rush Circuit Court her election rejecting the provisions of her husband's will, and electing to take under the law.

The following is a copy of the contract in controversy, together with a copy of the estimate of the value of the personal property held by the husband on January 1, 1890: "This agreement, between Archibald M. Kennedy, of Rush county, Indiana, and Sarah Hall (formerly English), of Greensburg, Decatur county, Indiana, witnesseth, that the said parties have mutually promised to intermarry. Now, for the purpose of arranging all questions of property, and in consideration of said promise to marry, said parties agree as follows: All the property of both parties, now owned or hereafter acquired by them, or either of them, to be the common property of both parties, the rents and profits of which are to be used for their

support.   And at the death of said A. M. Kennedy all the property now owned by said Sarah and one-third of all the property acquired by them, or either of them, in excess of living expenses, taxes and repairs during their marriage (the said A. M. Kennedy to make a schedule or estimate of his personal property owned by him on the first day of January, 1890, and attach the same to this agreement), and all property acquired after that time, after paying expenses, etc., as above stated, is to belong one-third thereof to said Sarah, which together with the property now owned by her, is to be her own separate property.   It is also agreed that, should said Sarah survive said A. M. Kennedy, then she is to have an annuity of two hundred dollars during her life, or so long as she remains a widow, which annuity is to be secured to said Sarah by all said Kennedy's legal heirs executing a bond with good and sufficient security conditioned for the prompt payment to her of the said annuity, before they shall be entitled to take possession of his estate. It is further agreed that if the said Sarah does not remain a good, true, faithful and loving wife until the death of said A. M. Kennedy, or if she separates from him, then in that case she is not to have anything but the property now owned by her; but no one is to be permitted to bring complaint of the want of love, care and fidelity to said Kennedy but he himself, unless brought during his life time.   Witness our names this 21st day of May, 1889.   Archibald M. Kennedy, Sarah Hall."   "According to the above agreement I have estimated the value of my personal property on the 1st day of January, 1890, to be one horse and buggy and harness, to be worth one hundred and fifty dollars, and hogs, corn and hay to the value of one hundred dollars.   This constitutes all the personal property owned by me over and above

what will pay my debts, besides household furniture and the two thousand dollar note on my son Charlie, not taken into account. All increase above that, my wife, Sarah, will be entitled to the one-third. A. M. Kennedy."

The contention of counsel for appellant is that in accord with the proper construction of this contract, it must be held that it was not intended thereby to intercept the rights of the wife, which the law, at the death of her husband, would award her in his estate as his surviving widow. They insist that it was the intention of the parties that the appellant should have the annuity provided in the contract, after the death of the husband, in addition to the provisions made for her by law. Counsel for appellee, however, contend that appellant's rights and interest, in respect to the estate of her late husband, must be measured solely by the contract, and that she is thereby barred from claiming or asserting her life interest and her rights of quarantine in the lands in controversy. Appellant's counsel insist that the one-third life interest in the lands of her deceased husband, and also her right to the widow's quarantine, are rights which appellant is awarded under sections 2644, 2653, Burns' R. S. 1894, and consequently she can only be barred or deprived of such rights thereunder in the manner provided by the statute of descents for creating a jointure for an intended wife. Sections 2661, 2663, Burns' R. S. 1894 (2500, 2502, R. S. 1881). Therefore they say that, inasmuch as the contract in question fails to respond to the requirements of section 2661, *supra*, in not expressly stipulating that appellant assented to receive or accept the provisions made for her *"in lieu of all right or claim"* in the lands of her husband, she is entitled to her legal rights in respect to such lands.

VOL. 150—41

The case at bar, however, is not one of a settlement or jointure under the statute, but is simply an antenuptial contract, and is in the nature of what is denominated by the authorities as an "Equitable jointure." In 2, Scribner on Dower, page 409, section 35, in treating upon the subject of legal and equitable jointures, the author says, "With respect to the legal requisite, that the estate limited in jointure be such an estate of freehold as should continue during the wife's life, no such circumstance will be necessary in equity in order to make the jointure an absolute bar to dower, if the intended wife be of age and a party to the deed; because, as she is able to settle and dispose of all her rights, she is competent to extinguish her title to dower upon any terms to which she may think proper to agree." Continuing on page 413, section 42, it is said, "The cases are not entirely agreed upon the question as to whether an antenuptial contract which merely secures to the wife her separate property, and makes no provision for her out of her husband's estate, is a good equitable jointure; but in a majority of the cases it is held, that if it be a part of such agreement that the wife shall relinquish her dower, it will be good in equity."

The right of an adult intended husband and wife in contemplation of marriage, to intercept a statutory line of descent, or the rights conferred by law, and substitute by contract, or agreement, a rule of inheritance of their own creation, by which their respective rights in the property of each other may be measured or determined, is a well settled principle. Bishop on Married Women, section 427; *McNutt* v. *McNutt*, 116 Ind. 545, 2 L. R. A. 372. In fact, no principle seems to be more firmly settled at the present time than that an adult woman, before her marriage, may bar her legal rights in her husband's estate by her agreement

to accept any other provisions in lieu thereof, and such an agreement will be upheld and enforced by the courts in the absence of fraud or imposition upon her, and where it may be said, under the particular circumstances, that it is not unconscionable. *McNutt* v. *McNutt, supra,* and authorities there cited; *Shaffer* v. *Matthews,* 77 Ind. 83; *Andrews* v. *Andrews,* 8 Conn. 79; *Barth* v. *Lines,* 118 Ill. 374, 7 N. E. 679. In *McNutt* v. *McNutt, supra,* on page 550 of the opinion, Elliott, J., speaking as the organ of this court, said: "The truth is, it is exceedingly difficult to imagine why, in any case where there is no fraud, courts should displace the judgment of contracting parties and substitute their own. No person in the world can so well and so justly judge as the contracting parties themselves, and it is only in the strongest and clearest cases that courts should disregard their judgment, and never where there is neither positive wrong nor a fraud."

Tested by these well settled principles, we are of the opinion that appellant and her prospective husband, at the time they executed the contract in controversy, intended that her rights in his estate, at his death, should be measured solely by the provisions therein made for her. It is true that the instrument is awkwardly drafted, and inaptly worded, but a court, in construing a marriage contract, will endeavor to so interpret it as to carry out the true intent of the contracting parties, without regard to the strict technical meaning of words therein employed. 14 Am. and Eng. Ency. of Law, 550.

The rule by which we must be controlled in the interpretation of this contract is that which is applicable to any other contract: First, it must be considered, not in fragments, but as an entirety, and the intention of the parties ascertained through the words

they have used. To ascertain their intention, regard should be had to the character of the instrument, the condition of the parties, and the object which they had in view. *City of Vincennes* v. *Citizens, etc., Co.,* 132 Ind. 114, 16 L. R. A. 485; *Davenport* v. *Gwilliams,* 133 Ind. 142, 22 L. R. A. 244; 5 Lawson's Rights and Remedies, section 2316; *Ragsdale* v. *Barnett,* 10 Ind. App. 478.

The circumstances or conditions of the parties to this contract, at the time of its execution, appear from the averments of the answer to have been substantially as follows: Mr. Kennedy, the intended husband, was a widower seventy-one years of age; the father by a previous marriage of five adult children; and was the owner at the time of 240 acres of land, being that now in dispute, of the value of $15,000, and an annual rental value of $600, and was also the owner of some personal property. There is no contention that appellant, at the time she entered into the contract, was not fully apprized of the amount and value of the property owned by her husband. She, it appears, was a widow forty-three years old, with no children, being the junior of her future husband by twenty-eight years, and, at the time, was the owner of real and personal property of the value of $1,000.00. At the date of the contract, the act of March 11, 1889, which vests a childless second wife, on the death of her husband, where the latter leaves surviving children by a previous marriage, with a life estate in one-third of his lands, was in force. From the fact that at the date of this agreement, the husband had passed the age of "three score years and ten," the usual period allotted to man, each of the parties, under the circumstances, may have reasonably supposed that the wife would survive her intended husband, and, considering their respective

Kennedy *v.* Kennedy *et al.*

ages, they might also have reasonably assumed that no child or children would be born to them as fruits of the marriage. Under such circumstances, and in view of the fact that children of the husband, by a former marriage, would probably survive him, appellant is presumed to have known that, under the law, so far as her interest in his lands was concerned, she would be confined to a life estate in one-third thereof. Ordinarily, the presumption, at least, would be that each of the parties was aware of the provisions made by law, and that they contracted with the full knowledge of such legal provisions. The written agreement states that the parties "have mutually promised to intermarry," and then follows a stipulation in these words: "Now, for the purpose of arranging all questions of property, and in consideration of said promise to marry, said parties agree, etc." No question of property rights would seem to have been contemplated other than those which would arise under the law by reason of the parties becoming husband and wife; and to provide for and adjust such rights by their own agreement, instead of leaving them to be controlled by the law, would certainly, under the circumstances, appear to have been the object in view. In settling these questions, and providing, by their own mutual agreement, based on the consideration of marriage, the highest recognized by law, the means by which they should be measured and determined, the parties in effect provided: First, that the property owned by each, at the time of the execution of the contract, and also that thereafter acquired, was to be considered or used as a common fund for their support; or, in other words, the rents and profits arising therefrom during the marriage, were to be subjected to or applied to the support of both. Under the law, in the absence of this agreement, the husband would

not have been authorized to apply the rents and profits accruing from the separate property of the wife, during the marriage, to their support. Second, at the death of the husband, all of the property held by appellant at the date of the agreement, together with one-third of all that might be acquired by them, or ·either of them, after deducting living expenses, taxes, etc., was to belong to the wife, as ·her own separate property. In addition to this, it was provided that she was to be paid an annuity of $200 during life, or so long as she remained a widow. The payment of this annuity was to be secured by a bond, executed by the heirs of the husband, with good and sufficient security, after which it was in effect stipulated that his heirs would be entitled to take possession of his estate.

Considering the age of the husband, and the fact that he had five living children, who, so far as we are apprised, were deserving of their father's bounty, it would not be reasonable to assume that appellant's future husband, at the very threshold of their marriage, intended by the terms of the instrument in question to make provisions for her in addition to the portion of his estate which the law would award her, in the event she survived him as his widow. If the interpretation of the contract, for which appellant's counsel contend, be accepted as the correct one, then the part of the husband's estate, to which apppellees, as his children and heirs, would be entitled, in the absence of the contract, would be diminished by subjecting such part of the estate so received by them, to the payment of the annuity; and thereby, appellant's interest in the estate would be enlarged, at least, to the amount of the annuity, over and above that awarded to her by the law.

It is evident, we think, that such a result was not

intended by the parties to this contract, and there is nothing in its terms or stipulations that will justify such a construction. Certainly, when the conditions and circumstances of the contracting parties are taken into consideration, there can be no doubt but what the husband intended, and the appellant on her part assented, that the provisions so made for her, by the contract in question, were to be in lieu of, or as a substitute, at his death, for her legal rights or interest in his estate. Considering the entire scope of the contract, it is manifestly repugnant to the claim which appellant asserts, that she is entitled to the benefits of the provisions made for her therein, and also to her rights under the statutes.

. The instrument in question being an antenuptial contract, she can therefore exercise no choice by election but in the exercise of her rights, she is confined alone to its provisions. The contention of counsel, that to uphold this agreement would be unconscionable, cannot, in reason, under the circumstances, be sustained. It cannot be asserted that she agreed to receive a mere pittance of her husband's estate. In addition to her holding the property, which she had at the time of her marriage, as her own, together with one-third of that acquired by her and her husband, she was to be paid an annuity of $200 for life, or during her widowhood; and, as the annual rental value of the lands in controversy is $600, it may be said that the payment to her of this annuity is virtually equivalent to the use and enjoyment of one-third of her husband's lands, as a tenant for life.

This case is quite unlike that of *Achilles* v. *Achilles*, 151 Ill. 136, 37 N. E. 693, upon which counsel for appellant rely. In that case it did not appear that the wife had entered into the marriage contract with a full knowledge of the extent of the husband's property.

The latter owned personal property at the time of the execution of the contract, of the value of $10,000, and real estate worth $12,500.   In the absence of such a contract, the wife, at his death, would have been entitled, under the law, as the court states, to all of his personal property, and one-half of his real estate, absolutely, and dower in the remainder of such realty.   It appears that she agreed, in lieu of her legal rights in his estate, to accept an annuity of $200 during widowhood, and in addition to this the right to use a half of a house and lot.   It was held by the court in that case that the provisions made for her under the contract therein involved were so disproportionate to the estate of the husband that the contract could not be upheld, in the absence of proof that it was fairly entered into on the part of the wife, with the full knowledge of the extent of the property owned by her husband.   An examination of the facts of that case will readily distinguish it from the one at bar.   The court did not err in holding the answer sufficient as a defense to appellant's action, and the judgment is therefore affirmed.