## UNGER *v.* MELLINGER, EXECUTOR.

[No. 6,442.   Filed April 21, 1909.]

1. APPEAL.— *Judgment.— Procedure.— Presumptions.—* All reasonable presumptions will be indulged by the courts of appeal in favor of the proceedings and judgment of the trial court.   p. 526.

2. APPEAL.—*Insufficient Evidence.—*The Appellate Court will not reverse a judgment for want of evidence unless there is no legal evidence tending to support some essential fact necessary to such judgment.   p. 526.

3. DESCENT AND DISTRIBUTION.—*Husband and Wife.—Antenuptial Contracts.*—Persons about to marry may regulate the descent of their property, regardless of the laws of descent, by the execution of an antenuptial contract. p. 527.

4. CONTRACTS.— *Antenuptial.— Evidence.— Husband and Wife.—* Where a witness testified that appellant and decedent, just prior to the marriage, had the minister draw a contract, which each signed, providing that if she predecease him he should have no interest in her estate, and three other witnesses testified to hearing appellant admit that he was to have none of her property, a finding that he should take nothing, as her husband, from her estate, is supported by the evidence. p. 527.

5. EVIDENCE. —*Admissions.—Contracts.—Continuance.*—Admissions by a husband that he was not to have any of his wife's property and that it was to that effect in "black and white," are against his interest, and therefore competent as original evidence that a contract to that effect had been made and that it was still in force. p. 528.

From Clinton Circuit Court; *James F. Elliott,* Special Judge.

Petition by John Unger against Jacob Mellinger, as executor of the will of Eliza Unger, deceased. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*John C. Farber, John C. Rogers* and *W. R. Moore,* for appellant.

*J. V. Kent, W. S. Sims* and *O. E. Brumbaugh,* for appellee.

MYERS, J.—This cause is here for the second time. *Unger* v. *Mellinger* (1906), 37 Ind. App. 639, 117 Am. St. 348. The petition of appellant remains unchanged. Appellee's defense has been changed from the theory of a postnuptial contract to that of an antenuptial contract. Upon the return of this cause to the court below appellee filed two amended paragraphs of answer, each averring, in substance, that prior to the marriage of the appellant with appellee's decedent, and in contemplation of marriage, they entered into a contract whereby each agreed that neither should have any interest in the property of the other; that the contract was in writing; that it had been lost or destroyed

without the knowledge or consent of the decedent; that it had never been revoked, canceled or destroyed by the decedent; that after a good-faith and diligent search appellee was unable to find said contract, and therefore was not able to set forth in detail the contents of the same or file a copy thereof with his answer. To said paragraphs of answer appellant filed a verified reply in denial.

The only questions discussed arise upon the assignment that the court erred in overruling appellant's motion for a new trial.

For a reversal of the judgment appellant insists: (1) That there is no legal evidence tending to prove that an antenuptial contract ever existed; (2) that such contract was not shown to be in existence at the time of the death of Eliza Unger. All reasonable presumptions will be indulged by this court in favor of the proceedings and judgment of the trial court. It is only where there is no legal evidence to support a fact essential to the court's finding that this court will interfere with the judgment rendered by the trial court.

It appears from the evidence that at the time of the marriage of appellant with appellee's decedent, formerly a Mrs. Thrush, the appellant owned property valued at $20,000, and such decedent, property valued at $3,500. One witness testified that for some time prior to the marriage she, the witness, lived with her uncle and aunt, who lived in the same house with Mrs. Thrush; that just before the marriage, the minister, who was there to perform the ceremony, prepared a written instrument, and, in the presence of Jacob and Louisa Michael and said witness, read the same to the appellant and Mrs. Thrush. This witness testified as to the contents of that instrument, in substance, as follows: It was dated October 20, 1891. John Unger and Eliza Thrush are to be joined together as husband and wife, and agree that if John Unger dies first, after their marriage, Eliza, his wife, shall have a widow's share of his estate, and if she dies

first, John Unger is to have none of her estate. It was signed by John Unger and Eliza Thrush. This same witness said that on the morning after the marriage Mrs. Unger handed the contract to her aunt, Louisa Michael, and it was again read. Three other witnesses testified to hearing the appellant say that he was not to have any of his wife's property; that it was to that effect in black and white. These admissions are said to have been made at different times, and long after the marriage. The property of each was always kept separate.

On April 10, 1899, Eliza Unger, with her husband, this appellant, went to the office of an attorney, and to the attorney, as testified to by him, they made known to him the fact that Mrs. Unger desired to make a will. He first made a pencil memorandum of the disposition which she desired to make of her property. Appellant was present and took part in the conversation, "and made a statement, in substance,. that he wanted her to dispose of her property just as she wanted to; that he did not want any of it, or was not to have any of it." The exact language the witness does not remember. After the will was written it was read over to Mrs. Unger, in the presence of Mr. Unger, and signed by Mrs. Unger. It made no provision for her husband. While the law casts upon a husband and 3. wife a certain contingent interest in the other's property, yet by what is known as a marriage settlement or antenuptial agreement such right or estate may be so controlled as to cut off the interest which the law would otherwise give. *McNutt* v. *McNutt* (1889), 116 Ind. 545, 2 L. R. A. 372; *Unger* v. *Mellinger, supra; Kennedy* v. *Kennedy* (1898), 150 Ind. 636. The evidence disclosed by the record was sufficient to warrant the court in 4. finding that the appellant had entered into an antenuptial contract prior to his marriage with his wife, an interest in whose property he now seeks to obtain. The only evidence that the contract was not in existence or in

force at the time his wife died was the fact that the contract could not be found. The court having found that appellant and his wife had entered into an antenuptial contract, whereby appellant was not to have any interest in the wife's property, and this fact being reinforced by appellant's admissions, made some years afterwards, that he was not to have any interest in his wife's property, taken in connection with the presumption that the contract was, in its nature, continuous, strongly tends to prove the ultimate fact of its existence at the time Eliza Unger died. *McAfee v. Montgomery* (1898), 21 Ind. App. 196, 202; *Abbott* v. *Union Mut. Life Ins. Co.* (1891), 127 Ind. 70, 75; 16 Cyc., 1052; 1 Greenleaf, Evidence (16th ed.), §41. The admissions of appellant were against his interest, and were competent as original evidence as tending to prove that at the time they were made the contract was still in force, as well as that such a contract had been made. *Logansport, etc., Turnpike Co.* v. *Heil* (1889), 118 Ind. 135.

After a careful reading of the evidence in this case we cannot say that there is no evidence from which the court might not find the ultimate facts in question. This cause was tried by the court, and for aught that appears from the record a fair trial was had. Such being the state of this record, and not being at liberty to weigh the evidence, we would not be authorized to disturb the judgment.

Judgment affirmed.