Estate of William H. Myers, Deceased, Floyd F. Myers, Executor v. Commissioner.
Estate of Myers v. Commissioner
Docket Nos. 4833-64, 2007-65.
United States Tax Court
T.C. Memo 1968-200; 1968 Tax Ct. Memo LEXIS 100; 27 T.C.M. (CCH) 975; T.C.M. (RIA) 68200; September 10, 1968. Filed Jerome B. Van Orman, Fort Wayne Bank Bldg., Fort Wayne, Ind., for the petitioner. Wayne I. Chertow and Eugene P. Bogner, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in petitioner's estate and gift taxes and additions to tax as follows: Docket No. 4833-64
Estate Tax
$52,351.02
*104 Docket No.
2007-65
Year
Gift Tax
Additions to Tax
Sec.6651(a), I.R.C. 1954
and its predecessors
1938
$ 65.98
a $ 16.50
1942
207.87
b 51.97
1956
998.55
249.64
1957
8,389.67
2,097.42
1958
1,962.64
490.66
1959
4,149.60
1,037.40
1960
4,360.38
1,090.10
On a motion granted at trial these cases were consolidated for trial, brief and opinion. The issues presented for decision are: (1) Whether William H. Myers made taxable gifts of real estate and corporate securities and forgave certain indebtednesses during the years in issue; (2) Whether half of the gifts made by William H. Myers may be treated as having been made by his spouse; (3) Whether petitioner is liable for additions to tax because of William H. Myers' failure to file gift tax returns; (4) Whether certain farmland, the remainder interest in which was given away in 1942, is includable in William H. Myers' gross estate at a valuation of $17,000; (5) Whether the securities William H. Myers transferred from June 5, 1956, through *105 the date of his death were made under trust instruments dated April 18, 1957, and, if so, whether they were includable in his gross estate as a result of retained life interests; (6) Whether a bequest of $50 per month for life to William H. Myers' widow is a terminable interest, disqualifying it as a marital deduction. Findings of Fact Some of the facts have been stipulated and are found accordingly. Floyd F. Myers (herein called Floyd) was appointed executor of the estate of his father, William H. Myers (herein called William), who died testate on May 16, 1960, a resident of Waterloo, Indiana. A Federal estate tax return for the estate of William H. Myers was filed on August 16, 1961, with the district director of internal revenue at Indianapolis, Indiana. Floyd, the executor, was a resident of Waterloo, Indiana, at the time the petition herein was filed. William moved in 1898 to DeKalb County, Indiana, and began farming. In the ensuing years, he acquired several hundred acres of land and developed a successful 977 farming operation. His six children, Florence Staley, Chester Myers, Russell Myers, Floyd Myers, Edna Rakestraw, and Donald Myers, helped in the farming activities *106 and were given 80-acre homesites at the time of their marriages. In 1938 William transferred to his daughter Edna Rakestraw the remainder interest in 80 acres of land in DeKalb County, retaining a life estate. A contract entered into by William and his wife Ida with Edna Rakestraw granted to the latter the right to occupy the premises, subject to William's right to use all buildings except the dwelling house, in consideration for the payment of $200 annual rental. Respondent determined that the value of the 80 acres was $7,000 and that William made a taxable gift of the remainder interest which was valued at $4,398.45. On March 6, 1942, William deeded 60 acres of his farmland to his son, Floyd, reserving to himself a life estate. Under a simultaneously executed contract between the parties, Floyd agreed to pay, as consideration for the conveyance, $200 peryear for the life of William, with payments to cease after 20 years. William reserved a vendor's lien on the land, and Floyd agreed that his estate would be liable for the payments in the event he predeceased William. The total payments were calculated to equal the $4,000 paid by William in 1934 to acquire the land. Pursuant to *107 the contract, Floyd made 30 payments by check to William totaling $3,325, three of which, totaling $300, were not negotiated but were returned to Floyd to offset expenses relating to the land which were paid by him. Most of the checks were for the sum of $100, were paid semi-annually, and contained the notation "Rent on 60 acres." Floyd began farming the 60 acres in 1942 and paid one-half of each year's crop to William until his death. Respondent determined that the value of the 60 acres in 1942 was $9,000, and that William made a taxable gift of the remainder interest to the extent that its value, determined to be $6,103.26, exceeded the value at that time of the consideration provided by the donee, $1,800. At the time William purchased the 60 acres for $4,000 there were buildings and sheds on it. Both the land and buildings were characterized as in "fair" or "average" condition. Thereafter, the land, including 10 acres of "muck ground," were farmed in their original condition. The only sale of similar land in the area occurred in the early 1950's when Chester Myers and his son purchased 40 acres of unimproved land from William for $150 an acre. The value of the 60 acres in *108 1942 was $6,000, and its value in 1960 was $12,000. On April 2, 1956, William conveyed 40 acres of land to Edna Rakestraw and her husband Dale in consideration for $600 annual payments to him for the remainder of his life. The Rakestraws made five $500 payments under the agreement. Respondent valued the 40 acres at $7,000 in 1956 and determined that William made a taxable gift of $4,126.96 to the Rakestraws, which represents the value of the land less the value of an obligation to pay $600 per year for the life of William. William made taxable gifts in 1956 by the release of indebtednesses of $200 per year for the life of William from each of Floyd, Chester Myers and Edna Rakestraw. In addition, a taxable gift of $5,000 was made by William to Donald Myers in 1958 by the release of an indebtedness in that amount owing from Donald Myers to William. In each of the years 1956 through 1960 decedent made gifts of shares of stock of various corporations. The dates of these gifts, number of shares given and corporations whose shares were given are as follows: Date
Number
Corporation
of Shares
June 5, 1956
360
Indiana Gas & Water Co.
Dec. 20, 1956
330
Central Soya Co., Inc.
Mar. 7, 1957
630
Northern Ind. Public Service Co.
Apr. 29, 1957
780
Central Soya Co., Inc.
May 9, 1957
300
Northern Ind. Public Service Co.
Aug. 23, 1957
600
Life Company
Jan. 23, 1958
320
Central Soya Co., Inc.
Mar. 3, 1959
520
American Marietta Corp.
Mar. 4, 1960
1,740
Wellington Fund
*109 The shares of stock were allocated equally among the children on each occasion that gifts were made with three exceptions, one of these being of minor consequence only when Floyd F. Myers was allocated two shares more than the others, and the other two being of some significance to reflect indebtednesses that had been forgiven by decedent. In particular, with respect to the gift of 520 shares of American Marietta, the shares were divided unequally in order to reflect the forgiveness of a $5,000 indebtedness of Donald Myers to the decedent. In order to protect their father's future income, William's children induced him to 978 execute on April 18, 1957, 6 trust agreements, one for each of the children. All of the agreements contain identical terms; in each William is named trustor and one of his children and the child's spouse are named trustees and beneficiaries, except that in the agreement for Russell Myers, only Russell is designated trustee and beneficiary. The following trust agreement is typical: This Agreement made and entered into this 18th day of April, 1957, by and between WILLIAM H. MYERS, of Waterloo, Indiana, hereafter referred to as Trustor, and DALE M. RAKESTRAW *110 and EDNA L. RAKESTRAW, of Waterloo, Indiana, hereinafter referred to as Trustees, WITNESSETH: Heretofore the Trustor has assigned, transferred and conveyed to the Trustees certain property specifically described in Schedule A attached hereto. The Trustees hereby acknowledge receipt of said property and agree to hold it, together with such additional property as may be transferred to them as Trustees, to become a part of the principal of the trust created hereby, in trust, to be administered and distributed as hereinafter set forth: 1. The Trustees shall pay to Dale M. Rakestraw and Edna L. Rakestraw, husband and wife, from time to time, the net income (current or accumulated in prior years) of the trust. 2. At the expiration of ten (10) years from the date of this agreement, the Trustor shall become entitled to receive the net income of the trust. 3. Upon the death of the Trustor the trust shall terminate and the Trustees shall distribute to Dale M. Rakestraw and Edna L. Rakestraw, if living, and if not to their estates, the accumulated net income (including accrued and/or undistributed current net income) not previously distributed and the principal of the trust. 4. The *111 Trustees are expressly authorized to hold securities in their individual names instead of in their names as Trustees whenever they deem it advisable and for such length of time as they deem it advisable. 5. The Trustor shall have the right at any time to add to this trust other property acceptable to the Trustees which additional property, on its receipt and acceptance by the Trustees, shall become a part of the trust estate. 6. The Trustees shall have the following rights and powers: to retain and continue, or to change investments, to sell, pledge, or otherwise dispose of, all or any part of the property held in trust hereunder at such times, for such prices and on such terms as said Trustees may deem advisable; and to invest and reinvest any funds held in trust hereunder in such stock, bonds, securities or obligations as said Trustees may deem advisable, free of any and all restrictions or limitations imposed by law. 7. If an individual Trustee shall die or resign no successor Trustee shall be appointed and the continuing Trustee shall have all the powers, discretions and duties herein vested in the joint Trustees. IN WITNESS WHEREOF, we have hereunto set our hands and seal *112 the day and date first above written. (s) William H. Myers William H. Myers TRUSTOR (s) Dale M. Rakestraw Dale M. Rakestraw (s) Edna L. Rakestraw Edna L. Rakestraw TRUSTEES SCHEDULE A - TRUST ASSETS 1. 55 shares of Central Soya Company, Inc. stock 2. 126 shares of Northern Indiana Public Service Company stock 3. 60 shares of Indiana Gas & Water Company stock. The schedule of trust assets is identical in all the agreements except the one naming Donald and Melba Myers trustees and beneficiaries in which only 55 shares of Central Soya Company, Inc., and 60 shares of Indiana Gas & Water Company are listed as trust assets. On Schedule G of William's Federal estate tax return, an affirmative answer was given to questions 2a, 3a and 4 indicating that William had made transfers of amounts of $5,000 or more without an adequate and full consideration in money or money's worth, but not believed to be includable in the gross estate, that William, within 3 years immediately preceding his death, had made transfers of his property without an adequate and full consideration in money or money's worth, and that there were in existence at the time of William's death trusts created *113 by him during his lifetime. A notation was made that "Gifts referred to in Items 2 and 3 [all stock transferred by William to his children and their spouses] were effectuated by trust instrument." Floyd read the return and signed the declaration of its veracity as executor. All stocks given by William to his children before and after the execution of the trust instruments were tendered directly to 979 the donees in their names without any notations of restrictions. Those stocks given after April 18, 1957, were freely sold by Floyd and Donald Myers during William's lifetime, but those referred to in Schedule A of their trust instruments were not. All gifts of stock made by William to his children were made absolutely and were not made subject to the terms of the trusts. William never filed a Federal gift tax return. William's widow, Mirta Johnston Myers, joined with him in an antenuptial agreement dated June 17, 1942. The agreement recited that each had separate property and children by former marriages, and that they desired "to determine the right and interest each shall take in the property of the other at the time of the death of either." The agreement further provided: *114 in consideration of the marriage of the said parties, the said first party hereby agrees that in the event he shall survive the said second party he will take no interest whatever in any property of which she may die the owner and he hereby waives any interest he would take under the laws of the State of Indiana by reason of the marital relation * * * in the event the said second party shall survive the said first party she shall take as and in full of all interest she would otherwise have in the property of the said first party a life estate in and to * * * real estate situated in DeKalb County, Indiana, * * * In addition * * * the said first party agrees to provide for the payment to the said second party the sum of Thirty (30) Dollars per month from the time of his death until the death of the said second party which amount shall be paid out of dividends received from the Messenger Corporation on stock now held by him in said Corporation, the said stock to be held by Floyd Myers and he shall pay her the said sum semi-annually as the dividends are declared and paid by the Corporation * * * the said second party will and she does hereby waive any and all rights she would take in *115 the property of the said first party at the time of his death by reason of any law of the State of Indiana because of their said marital relation * * * William's will, which was eventually admitted to probate, referred to the antenuptial agreement and contained a devise to Mirta of the life estate provided for therein, and further recited that the monthly payments thereunder should be $50 rather than the $30 originally provided by the agreement. By agreement of May 24, 1960, Mirta, along with the children of William's previous marriage, ratified and affirmed the provisions of the antenuptial agreement and William's will, and the children agreed to pay her $50 per month in addition to the increased payments designated by the will, making a total of $100 per month to be paid to Mirta until her death. Opinion Issue 1 Gifts of Real Estate, Indebtednesses, and Securities We first consider respondent's determination that William made taxable gifts in 1938 and 1942 of the remainder interests and in 1956 of the entire interest in parcels of farmland owned by him. Petitioner presented no evidence showing error in respondent's determination with respect to the transfers in 1938 and *116 1956. Accordingly, we conclude that they constituted taxable gifts to the extent determined by respondent. Petitioner contends that the transfer of the remainder interest in 60 acres to Floyd on March 6, 1942, was a bona fide sale for an adequate and full consideration in money or money's worth. William bought the 60 acres during the depression years for $4,000. Respondent determined its value in 1942 to be $9,000, but presented no evidence at trial to justify such valuation after petitioner introduced evidence indicating a lower value. Based primarily upon the testimony of Floyd, who has been a longtime resident of DeKalb County and who was familiar with sales of land in the area throughout this period, we conclude that the value of the 60 acres in 1942 was $6,000. See Montana Railway Co. v. Warren, 137 U.S. 348 (1890); Lawton v. Strong, 249 F. 2d 299 (C.A. 6, 1957); and Ruud v. United States, 256 F. 2d 460 (C.A. 9, 1958). An agreement between William and Floyd, drafted on the date of the transfer, provided that consideration for the transfer would be the payment by Floyd of $200 per year, semiannually, for the life of William or for a *117 maximum of 20 years. Since Floyd's obligation to pay could have terminated prior to William's death, since Floyd's estate was made liable for the payments in the event Floyd predeceased William, and since William reserved a vendor's lien on the land, it is clear that the payments constituted consideration for the remainder interest. Petitioner argues that the value of half the crops raised on the land during the 980 life of William should be considered additional consideration under an oral agreement between William and Floyd which compelled Floyd to pay over to William such crops from 1942 to 1960. We view these payments as rent for Floyd's use of the land during the period of William's life estate and not as added consideration for the transfer of the remainder interest. For the purposes of computing the gift tax under the Internal Revenue Code of 1939, [1] the value in 1942 of the remainder interest in land owned by a 65-year-old man and worth $6,000 was $3,961.02, and the value at that time of an obligation to pay $200 per year, payable semiannually, for the life of a 65-year-old man was $1,582.62. Clearly, since the promise to pay was not adequate and full consideration *118 for the transfer of the remainder interest, William made a taxable gift to Floyd to the extent of the difference. Section 1002, Internal Revenue Code of 1939. Gifts of future interests in property did not qualify for the $4,000 annual exclusion applicable in 1942. Section 1003 (b) (2), Internal Revenue Code of 1939. The second source of gifts allegedly made by William were certain released indebtednesses. Respondent determined that William forgave in 1956 indebtednesses of $200 from each of Floyd, Chester Myers and Edna Rakestraw. Since petitioner failed to produce any evidence at trial to rebut the presumption of correctness attaching to respondent's determination, we must sustain the determination. In addition, William released in 1958 a $5,000 indebtedness represented by a note from Donald Myers. There is no evidence whatsover to establish adequate consideration passing from Donald for the release. Thus William made taxable gifts in 1956 and 1958 in the amount of the released indebtednesses. Respondent determined additional gifts from a third *119 source, transfers of corporate stock by William to his children in 1956, 1957, 1958, 1959 and 1960. Petitioner presented no evidence at trial nor has he argued on brief that the transfers of stock were made for adequate and full consideration in money or money's worth. We therefore hold that William made taxable gifts of the stock. A question remains, however, as to the quantum of interest given away. Petitioner contends that the transfers were absolute and that the gift tax should be imposed upon the full value of the shares of stock on the dates of transfer. It is argued that the annual exclusion applies without restriction to such transfers. On the other hand, respondent argues that all the stock was transferred subject to the trust provisions and constituted gifts of the income rights until April 18, 1957, and of the remainder interests, against which the annual exclusion does not apply. Section 25.2503-2, Gift Tax Regs. William transferred to his children 360 shares of Indiana Gas & Water Co. stock on June 5, 1956, 330 shares of Central Soya Co., Inc., stock on December 20, 1956, and 630 shares of Northern Indiana Public Service Co. stock on March 7, 1957. These shares of *120 stock constituted the total trust assets contained in Schedule A of the six trust instruments which were executed on April 18, 1957. The uncontroverted evidence in this record establishes that all of these shares were transferred in the names of the children and their spouses and, at the times of transfer, were subject to no written or understood limitations upon their use. In order to protect their father's interests, the children induced him to execute on April 18, 1957, the trust whereunder he was given income rights in the stock after a period of 10 years. There is no evidence to show that William contemplated the creation of any trusts prior to the time of execution of the trust instrument. It appears, then, that in fact the children, rather than William, were the settlors of the trusts. See Estate of Arnold Resch, 20 T.C. 171 (1953); Emil Klempner, T.C. Memo. 1955-307. They voluntarily returned, via the trsuts, some of the rights in the stock which William had previously transferred absolutely to them. The fact that Floyd and Donald Myers did not, during William's lifetime, sell the stock in Schedule A shows only that they strictly construed the *121 limitations which they placed upon themselves for the benefit of William. Stocks transferred by William subsequent to the date of the trust instruments were added to Schedule A and were not incorporated by any reference within the terms of the trusts. In addition, the testimony establishes to our satisfaction that 981 William made all transfers after that date without reservations of any kind, and, in practice, the stocks were treated as absolute gifts by the donees. We do not find that petitioner is estopped from contending that the gifts were absolute by the statement on the Federal estate tax return that the gifts of stock were effectuated by the trust instrument. Accordingly, we hold that petitioner has carried his burden of proving that all the shares of stock transferred by William to his children and their spouses were absolute gifts. Issue 2 Gift-splitting Petitioner has conceded that William's wife did not consent to gift-splitting with respect to any of the gifts. It therefore follows that half of the gifts made by William may not be treated as having been made by his spouse. Section 2513(a) (2), Internal Revenue Code of 1954. [2]
*122 Issue 3 Failure to File Gift Tax Returns Section 6651 and its predecessors [3] impose an addition to the tax for the failure to file a gift tax return unless the failure is due to reasonable cause and not due to willful neglect. Under these sections respondent determined additions to the gift tax owed by petitioner. Since petitioner failed to assign any error in this determination or to produce any evidence at trial to establish reasonable cause or lack of willful neglect, respondent's determination is sustained. Issue 4 Inclusion of 60 Acres of Farmland in Gross Estate Our finding of fact that William retained a life estate in the 60 acres of land transferred to Floyd on March 6, 1942, and our conclusion that the transfer was without adequate and full consideration (see Issue 1, supra) make the value of the land at William's death less the value of the consideration actually received by William for the transfer includable in William's estate *123 under section 2036(a) (1)[4] and section 2043(a). [5]
*124 Respondent determined the value of the land at William's death to be $18,000 based upon a price of $300 per acre. After evaluating the testimony in the record with respect to land values in the area over the period from 1934 to 1960, we accept Floyd's testimony that the value of the 60 acres at William's death was $12,000 or $200 per acre. We have found as a fact that under the agreement executed on the date of the transfer of the 60 acres, Floyd made payments during William's lifetime totaling $3,325 in consideration for the transfer. For purposes of determining the "value of the consideration received * * * by the decedent" under section 2043, we deem it immaterial that William failed for any reason to negotiate three of the checks totaling $300. It follows, therefore, that respondent was in error in determining that consideration for the transfer totaled $900. We hold that the 60 acres of farmland is includable in William's estate at a value of $8,675. Issue 5 Inclusion of Securities in Gross Estate Respondent argues that all shares of stock transferred by William to his children and their spouses were given subject to the provisions of the six trust instruments and are *125 982 includable in William's estate under section 2036 reduced by an outstanding term certain of income to the beneficiaries. We have held that none of the stock transferred by William were given subject to the trust terms (see Issue 1, supra). He made absolute gifts of the stocks on the dates of transfer, retaining no interest in them. The owners of the stock then gave to him lifetime income rights, subject to 10year rights to income in themselves. We do not view the substance of these transactions as antithetical to their form. Accordingly, we conclude that the shares of stock are not includable under section 2036 in William's estate. Cf. Estate of Ambrose Fry, 9 T.C. 503 (1947). Since respondent has conceded that none of the transfers of stock within 3 years of William's death were made by William in contemplation of his death, section 2035 [6] is inapplicable. *126 Issue 6 Marital Deduction Petitioner contends that, under Indiana law, William's widow as a childless second spouse is entitled to one-third of William's net personal estate and a life estate in onethird of his land. Since her interest in the personalty is not terminable, it is argued, "if her antenuptial agreement is placed as a bar to her statutory interest, then the compromise of this dispute [$100 a month payments for her life] should qualify for the marital deduction." In the Federal estate tax return petitioner claimed a marital deduction arising out of monthly payments to William's widow only to the extent of the $50 per month bequest under the will. William and his second wife entered into an antenuptial agreement under which they settled all property rights of each in the estate of the other. The agreement provided that both waived any statutory right to which they might be entitled under Indiana law. By this agreement, the parties waived their rights, provided by Indiana law, to elect to take against the will of the other. Section 6-306, Burns Indiana Statutes Annot. (1953 Rept.); Kennedy v. Kennedy, 150 Ind. 636, 50 N.E. 756 (1898). There is no evidence *127 herein that the agreement resulted from other than good faith bargaining between the parties. William directed in his will that the $30 monthly payments to his widow for her life be increased to $50 per month. This property interest was included in determining the value of William's gross estate and passed from William to his surviving spouse. Section 2056(a); [7] section 20.2056(e)-1(a) (5), Estate Tax Regs. [8] The question remains, however, whether the interest is a nondeductible terminable interest. [9]
*128 983 A terminable interest is one which will terminate or fail on the lapse of time or on the occurrence or the failure to occur of some contingency, e.g., a life estate, term for years, annuity, patent or copyright. Section 20.2056(b)-1(b), Estate Tax Regs. William bequeathed to his widow an annuity, a right to specific payments for the remainder of her life. No assets of the estate vested absolutely in William's widow at the date of his death, only the right to receive payments upon the condition that she survive him by one month or more. We consider this situation controlled by the decision of the Supreme Court in Jackson v. United States, 376 U.S. 503 (1964), in which an allowance under California law for monthly statutory support payments was held to be a "terminable interest." In the Jackson case the Government conceded that the allowance was an interest in property passing from the decedent to his surviving spouse. The Court held that under California law the widow "did not have an indefeasible interest in property at the moment of her husband's death since either *129 her death or remarriage would defeat it." Jackson v. United States, supra at p. 507. In this case no portion of the estate property vested in William's widow at the date of his death. A right to future payments out of income from specific estate assets was carved out for the benefit of William's widow while the assets themselves passed to William's children under the residuary clause in his will. Upon the termination or failure of her interest upon her death, the residuary legatees were entitled to enjoy the income rights. It follows, then, that William's widow received a nondeductible terminable interest. Section 2056(b) (1) (A) and (B). In addition, the obligation does not qualify as an indebtedness of the estate since it was not contracted for an adequate and full consideration in money or money's worth. Section 2053(c) (1) (A). A relinquishment of dower, or a statutory estate created in lieu of dower, or of other marital rights in a decedent's property or estate does not constitute to any extent consideration in money or money's worth. Section 2043(b). An additional *130 $50 per month payment to William's widow was provided for in an agreement with William's other heirs. This interest was not bequeathed to her by William. The regulations provide, however, that if as a result of a controversy involving a decedent's will, a property interest is assigned to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" but only if the assignment was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Section 20.2056(e)-2(d) (2), Estate Tax Regs. As previously indicated, petitioner presented no evidence to show that the antenuptial agreement was not binding on William's widow. Under Indiana law, in the absence of fraud or overreaching, the agreement constituted a complete settlement of all property rights between the parties. Since petitioner has failed to establish that the assignment was a bona fide recognition, resulting from arm's-length negotiations (see *131 Rev. Rul. 66-139, 1966-1 C.B. 225) of the widow's enforceable rights, we conclude that the right to the additional $50 monthly payments did not "pass from the decedent to his surviving spouse," and, thus, does not qualify for the marital deduction. To reflect the conclusions reached herein, Decisions will be entered under Rule 50. Footnotes
a. Sec. 3176, Rev. Stats., as amended by sec. 1103, 1926 Act and sec. 406, 1935 Act. ↩
b. Sec. 3612(d) (1), Internal Revenue Code of 1939↩.
1. Sec. 86.19(f), Table A, Regs. 108.↩
2. Hereafter all statutory references will be to the Internal Revenue Code of 1954 unless otherwise indicated.↩
3. Sec. 3176, Rev. Stats., as amended by sec. 1103, 1926 Act and sec. 406, 1935 Act; sec. 3612 (d) (1), Internal Revenue Code of 1939↩.
4. SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death - (1) the possession or enjoyment of, or the right to the income from, the property, or * * * ↩
5. SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION. (a) In General. - If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent. The parties litigated only the factual questions of the value of the land at the time of William's death and the amount of consideration actually received by him and have not raised any issue with respect to the formula used by respondent in determining the amount of the inclusion in the gross estate under section 2043(a). See Estate of Donald M. Nelson, 47 T.C. 279, 289↩ (1966).
6. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, pointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.↩
7. SEC. 2056. REQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is includable in determining the value of the gross estate. ↩
8. Sec. 20.2056(e)-1 Marital deduction; definition of "passed from the decedent". (a) The following rules are applicable in determining the person to whom any property interest "passed from the decedent": * * * (5) Any property interest transferred during life, bequeathed or devised by the decedent, or inherited from the decedent, is considered as having passed to the person to whom he transferred, bequeathed, or devised the interest, or to the person who inherited the interest from him. ↩
9. SEC. 2056(b). Limitation in the Case of Life Estate or Other Terminable Interest - (1) General Rule. - Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest - (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *↩